

DA 09-0314

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 177

STATE OF MONTANA,

        Plaintiff and Appellee,

     v.

ARTHUR ROY TADEWALDT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 08-172(d)
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joseph P. Howard; Attorney at Law, Great Falls, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

            John Parker, Cascade County Attorney; Great Falls, Montana

Submitted on Briefs:  June 29, 2010

Decided:  August 17, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Arthur Tadewaldt appeals from his convictions by jury of the offenses of felony assault with a weapon, felony tampering with a witness, and misdemeanor false report to law enforcement.  On March 31, 2009, the District Court sentenced Tadewaldt to a term of fourteen years at the Montana State Prison for the assault conviction, to a consecutive term of one year at the Montana State Prison for the witness tampering conviction, and to six months in the Cascade County jail on the false report conviction, to run concurrently with the sentences on the felony convictions.

¶2     Tadewaldt presents the following issues for review:

¶3     Issue One:  Whether the District Court abused its discretion in denying Tadewaldt's motion for a mistrial based upon the alleged violation of attorney-client privilege.

¶4     Issue Two:  Whether Tadewaldt's rights were violated by cross-examination and closing argument concerning Tadewaldt's conflicting accounts of the incident.

## BACKGROUND

¶5     In April, 2008, Tadewaldt and the victim, a female acquaintance named Thelma, had spent a day or more drinking heavily.  During the evening Tadewaldt approached his friend who was leaning over while sitting at a table, and she felt something move across her lower back.  Some minutes later Tadewaldt stated:  "Oh my God, Thelma, I need to get you to the emergency room."  He called a cab to take them both to the hospital, and

2

during the ride he told her to say that she had been injured during a robbery while walking home from a downtown bar.

¶6      Emergency room personnel found a ten-inch long, deep horizontal gash across Thelma's lower back. Tadewaldt described the wound as a "terrible gash in her back." Expert testimony was that the gash was likely made by a very sharp flexible metal blade, and was not a glass cut. Hospital officials notified law enforcement of Thelma's injury. Great Falls Police Officer Reeves interviewed Tadewaldt at the hospital, and Tadewaldt reported that Thelma had been robbed while walking from a bar to his house. Another officer interviewed Thelma and then Tadewaldt, who said that Thelma told him she was "robbed for her money" while walking from a bar and was stabbed in the process.

¶7      Officers had trouble getting a coherent account of the evening from Thelma. They were still trying to get information about the apparent robbery and assault and again talked to Tadewaldt. He became very angry, repeatedly cursing the officers and calling them liars and cheats. When Thelma finally identified Tadewaldt as her assailant he was arrested and taken to jail.

¶8      Tadewaldt testified in his own defense at trial. He said that he fell asleep at the table, waking to find Thelma hitting him on the head with something sharp held in her hand. A scuffle ensued causing Thelma to fall backward, striking her head and losing consciousness. When she awoke, he testified, she rolled around on her back and he first noticed that she had been cut. Tadewaldt testified that Thelma had been cut by broken glass on the floor after her fall from the table. Tadewaldt denied telling Thelma to claim

3

that she had been robbed and claimed that he first heard of the robbery when Thelma related it to hospital officials.

**DISCUSSION**

¶9 *Issue One: Whether the District Court abused its discretion by denying Tadewaldt's motion for a mistrial based upon the alleged violation of attorney-client privilege.* This Court reviews a district court's ruling on a motion for a mistrial for abuse of discretion. *State v. Longfellow*, 2008 MT 343, ¶ 9, 346 Mont. 286, 194 P.3d 694. A defendant alleging prosecutorial misconduct must demonstrate that there was misconduct and that it violated his substantial rights; this Court will not presume prejudice. *Longfellow*, ¶ 25.

¶10 On the night of the incident Tadewaldt told investigating officers that Thelma had been assaulted during a robbery as she walked from a bar. At trial he testified that he believed that she had been cut accidentally by broken glass when she fell backwards out of her chair. The prosecution cross-examined Tadewaldt about these two different versions of the event.

¶11 On cross-examination Tadewaldt tried to explain the inconsistent stories by testifying that on the night of the incident he did not understand what had happened and "did not want to elaborate" to the police. He admitted that on the night of the incident he did not tell investigating officers that Thelma's injury was an accidental broken glass cut. He was asked whether he ever told law enforcement that Thelma's injury was accidental during the five weeks he spent in jail, and he responded that he had requested "writing materials so I could write out my statement." Tadewaldt testified that he "did not want to

4

talk to law enforcement" but wanted to "make a statement to my counsel" who could convey the information to "the proper authorities."

¶12    The prosecutor asked Tadewaldt whether he told "anyone that Thelma was injured as a result of a broken glass." Tadewaldt responded: "That's confidential" but neither he nor his attorney stated any specific objection. The next question was: "Who did you tell that her injury was a result of a broken glass?" Tadewaldt's response was: "I had reached that conclusion and I shared that with my lawyer." Neither Tadewaldt nor his attorney objected to that question and answer. Finally, the prosecutor asked Tadewaldt whether he ever told his attorney to bring forward the broken glass theory. There was an objection that the District Court sustained. The prosecutor withdrew the question and concluded the cross-examination.

¶13    Defense counsel, outside the hearing of the jury, moved to strike the question and Tadewaldt's "ultimate response" because it "gets into the area of attorney/client information." The District Court denied the motion to strike but offered to give a cautionary instruction about attorney-client privilege and to admonish the jury that they were not to consider anything Tadewaldt may or may not have told his attorney. After further discussion and having the reporter read from the cross-examination transcript, defense counsel moved for a mistrial "based on the improper attempted use of privileged information in front of the jury" that created "higher prejudice" against Tadewaldt.

¶14    The District Court questioned defense counsel as to why the prosecutor's last question that was never answered was so prejudicial that it could not be addressed through a cautionary instruction and instead required a mistrial. Defense counsel referred

5

to a "specter" of privileged information and "damage [that] has already been done." The District Court asked defense counsel to describe the actual damage or prejudice, especially in light of the fact that Tadewaldt had previously testified that he had shared the glass theory with his lawyer. Defense counsel responded that the damage to Tadewaldt was that "they're trying to insinuate that Mr. Tadewaldt, although he has testified under oath today, might be trying to change his story for his own convenience sake."

¶15 After further discussion, the District Court concluded that defense counsel had failed to demonstrate that there was any substantive prejudice to Tadewaldt and that the motion for a mistrial should be denied. The District Court re-stated its intent to give a curative instruction on attorney-client privilege. The District Court gave a cautionary instruction specifically noting the reference to Tadewaldt's communication to his attorney; instructing that all such communications are privileged from disclosure; that the jury could not consider whether any such communications took place; and that the jury could not draw any inference positive or negative.

¶16 It is clear that Tadewaldt has failed to demonstrate any substantial prejudice resulting from the cross-examination. Tadewaldt, not the prosecutor, first opened the area of attorney-client communications. When Tadewaldt was asked who he had told his theory that Thelma was injured by broken glass, he responded that he "reached that conclusion and I shared that with my lawyer." There was no objection to this question and response, no motion to strike and no motion for a mistrial. Since Tadewaldt voluntarily and without objection testified that he had told his lawyer about the broken

6

glass theory, he cannot demonstrate any substantial prejudice by a subsequent unanswered question about whether he told his lawyer to "bring this version of events forward."

¶17    As the District Court found at trial, while there was a reference to privileged communications, no privileged information was disclosed. *Palmer v. Farmers Ins.*, 261 Mont. 91, 112, 861 P.2d 895, 908 (1993) (a mere reference to privileged reports is not enough to waive the attorney-client privilege). The only potentially privileged communication that was disclosed at trial--that Tadewaldt told his attorney about the broken glass theory--was voluntarily disclosed by Tadewaldt. The attorney-client privilege is held by the client and can be waived by the client through voluntary disclosure. Section 26-1-803, MCA; M. R. Evid. 503; *St. Peter & Warren v. Purdom*, 2006 MT 172, ¶ 23, 333 Mont. 9, 140 P.3d 478.

¶18    Moreover, Tadewaldt argued at trial that the prosecutor's question about bringing the version of events forward was unfairly prejudicial because it insinuated that he was "trying to change his story for his own convenience sake." If this were the intent of the prosecutor's cross-examination it was entirely proper and was not prosecutorial misconduct, as Tadewaldt asserts on appeal. When Tadewaldt testified he opened himself to cross-examination and to a testing of his explanation of the events. A defendant who testifies cannot insulate himself from cross-examination about prior inconsistent statements. It is not a violation of a testifying defendant's rights to be cross-examined about prior inconsistent statements. *Anderson v. Charles*, 447 U.S. 404, 408, 100 S. Ct. 2180, 2182 (1980); *State v. Baker*, 2000 MT 307, ¶ 18, 302 Mont. 408, 15 P.3d

7

379; *State v. Clausell*, 2001 MT 62, ¶ 62, 305 Mont. 1, 22 P.3d 1111. A cautionary instruction was a proper response by the District Court. *State v. Gerstner*, 2009 MT 303, ¶ 48, __ Mont. __, 219 P.3d 866; *State v. Long*, 2005 MT 130, ¶ 27, 327 Mont. 238, 113 P.3d 290.

¶19 Tadewaldt has failed to demonstrate that privileged information was revealed by the prosecution and that it materially affected his rights and prevented him from having a fair trial. Failing that, there was no reversible error in the cross-examination. *Palmer*, 261 Mont. at 113-14, 861 P.2d at 909. Therefore, the District Court did not abuse its discretion by denying Tadewaldt's motion for a mistrial and in giving a cautionary instruction to the jury.

¶20 *Issue Two: Whether Tadewaldt's rights were violated by cross-examination and closing argument concerning Tadewaldt's conflicting accounts of the incident.* Tadewaldt contends that the cross-examination discussed in Issue One, coupled with similar closing argument from the prosecutor, violated his rights under *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976) and should be considered on appeal as plain error. *State v. Wagner*, 2009 MT 256, ¶ 12, 352 Mont. 1, 215 P.3d 20. A prerequisite to plain error review is that it be plain that there was error at trial. *State v. Godfrey*, 2004 MT 197, ¶ 40, 322 Mont. 254, 95 P.3d 166.

¶21 *Doyle* held that it is a violation of a defendant's right to due process to allow the prosecution to use post-*Miranda* silence to impeach the defendant's exculpatory explanation of events offered at trial. *Clausell*, ¶ 56. *Doyle* does not apply to impeachment of a testifying defendant using inconsistent pre-*Miranda* statements, and

"no construction of *Doyle*" can prohibit the State from arguing the significance of a defendant's inconsistent voluntary statements. *Clausell*, ¶¶ 61, 62.

¶22 Tadewaldt has failed to demonstrate that the prosecutor commented or argued in any way concerning any post-*Miranda* silence. Tadewaldt was not silent and told officers the false robbery story. These statements were prior to his arrest and he concedes were prior to his being given any *Miranda* warning. He talked to officers investigating the circumstances of Thelma's injury and told them that she had been assaulted during a robbery. It was entirely proper for the prosecution to cross-examine him about the inconsistency between his initial robbery account and the broken glass account of the injury that he gave at trial. It was also entirely proper for the prosecution to argue that either or both accounts might be fabrications. *Anderson*, 447 U.S. at 408, 100 S. Ct. at 2182.

¶23 The prosecutor's questions and argument were not about Tadewaldt's prior silence, but about his prior inconsistent statements. Tadewaldt has failed to demonstrate that the prosecutor violated the *Doyle* rule in cross-examination or closing argument. There was no plain error.

¶24 Affirmed.

/S/ MIKE McGRATH

9

We concur:


/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS