
DA 10-0197

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 19

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

SUSAN M. SCHAFF,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 08-533
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Koan Mercer, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Ingrid Rosenquist,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  January 20, 2011

Decided:  February 15, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Susan Schaff appeals from her conviction after jury trial of felony DUI. We affirm.

## BACKGROUND

¶2 On the night of September 12, 2008, BNSF railroad personnel called the Yellowstone County Sheriff to report a suspicious vehicle parked on a rough muddy road in an unmaintained and remote area near railroad property on the west side of Billings. Deputies Tanna Skillen and Duane Weston responded and located the vehicle. They found Schaff in the driver's seat, slumped over to her right and with her pants partially removed. Skillen woke Schaff and when she opened the vehicle door noted that Schaff smelled of alcohol, had glassy bloodshot eyes, and was confused. The vehicle keys were in a cup holder in the center console.

¶3 Skillen asked Schaff why she was parked there and Schaff responded that she was trying to get some rest and that she was in Laurel. Schaff said that she had gotten out of the vehicle to urinate and had gotten back in without pulling up her pants. Schaff was disoriented and unsteady on her feet. Skillen did not locate any alcoholic beverage containers in or near Schaff's vehicle. The terrain was too rough and uneven to allow standard field sobriety tests, and Schaff refused a preliminary breath test. Skillen arrested Schaff for DUI and took her to the Yellowstone County Detention Facility.

¶4 Schaff refused to do any physical sobriety tests at the jail and refused to provide a breath or blood sample. Skillen then read a *Miranda* warning to Schaff, who said she

2

wanted an attorney. At trial the prosecution offered and the District Court admitted a videotape of the DUI processing. The tape depicts Schaff from the side, seated at a table listening to a female voice off camera reading various advisories about the consequences of a DUI charge. Schaff speaks only to decline the breath test and the physical sobriety test, and to state after the *Miranda* advisory that she wished to speak to an attorney. The tape ends at that point. The prosecution offered the tape based upon the belief that it showed Schaff to be confused and intoxicated.

¶5      Schaff testified at trial that on the day of the incident she had been in Billings, and that she drove to the remote location where she was found instead of returning to her home near Columbus because she was being stalked by a man named Slyder. She testified that he had assaulted and raped her two years earlier and that she had seen him that day in Billings. She also said that she had gotten a phone call from a law enforcement investigator about charges against Slyder as well as a threatening call from Slyder. She further said that she had nothing to drink before she got to the railroad property and that she parked and drank a bottle of wine that was in the vehicle. She testified she was asleep when Deputy Skillen woke her.

¶6      Schaff's primary contentions at trial were that she did not drink before parking, that she was not in actual physical control of the vehicle when officers arrived, and that the place she parked was not a public way. She did not deny that she was intoxicated. After a two-day trial the jury convicted Schaff of felony DUI. The District Court

sentenced her as a persistent felony offender to a term of 12 years in prison with 4 years suspended.

## STANDARD OF REVIEW

¶7 Whether a defendant's right to due process has been violated is a question of constitutional law over which this Court exercises plenary review. *State v. Lally*, 2008 MT 452, ¶ 13, 348 Mont. 59, 199 P.3d 818.

## DISCUSSION

¶8 On appeal Schaff contends that the State repeatedly used her post-*Miranda* silence to create an inference of guilt in violation of her right to due process.

¶9 The trial in this case took place over two days. The State's case was brief, consisting of testimony from the two officers who responded to the scene and arrested Schaff. Schaff offered testimony about the nature of the area where she was found and about her emotional state on the day of the incident. Schaff's emotional state evidence was, in summary, that she drank alcohol that night because she had experienced "several days of extreme anxiety, fear, and stress" because of the alleged stalking, telephone calls from the stalker and a State investigator, and the prospect of reopening the prosecution against the stalker. The prosecution first heard this story during the opening argument of Schaff's attorney at trial and then during Schaff's testimony.

¶10 The District Court ultimately concluded that evidence of why Schaff drank was irrelevant to the case. Schaff conceded at trial that she had been drinking and was in her vehicle when the officers arrived. However, after Schaff testified about her mental state

in some detail without objection, the District Court determined that it was by then "part of this case." The State nonetheless attacked this evidence by showing that Schaff never mentioned anything about being in fear and fleeing from a stalker when the officers arrived to check on her. Instead, she said that she had come out to the remote area to "get some rest" and thought she was in Laurel.

¶11 Deputy Skillen testified and described her interaction with Schaff, which included talking with her at the scene, transporting her to the Detention Center, and reading her several DUI advisories, and ultimately a *Miranda* advisory. Skillen testified that after Schaff refused to provide a breath sample or to participate in physical sobriety tests, and asked to speak to an attorney, the "active investigation" of the case ceased. There was no evidence at trial that Skillen or any other officer had any contact with Schaff after she asked for an attorney.

¶12 Deputy Skillen testified describing what she observed, and the prosecutor asked the following:

> Q. At any time did she—other than saying she was out there to get some rest, did she say anything else to you?
> A. No. That was the only comment she made about why she was there.
> Q. Did she ever say that she was scared that somebody from her past was coming after her?
> A. No.
> Q. So what is the only explanation the defendant gave you for being out there that evening?
> A. She was getting some rest.

Deputy Weston, who also responded to the scene, testified to describe his observations. He did not converse directly with Schaff and only observed Skillen's interactions with her, mostly out of hearing range. Weston's involvement with Schaff ended that evening.

¶13 Schaff testified about being stalked and being upset the evening she was arrested. On cross-examination she gave the following testimony:

> Q. Now, when the officers got there, did you mention this Steven Slyder to them? Did you ever say, "Oh thank God you're here. I had this guy following me"?
> A. No.
> O. Did you ever say, you know, "Be on the lookout. There's a crazy man who is out to get me. He might sneak up on us while we're out here"?
> A. No. I was asleep.
> Q. You were asleep?
> A. And out of it.
> Q. So at any time did you mention this story about Mr. Slyder to the law enforcement officers that evening?
> A. No I did not.
> Q. At any time did you mention the bottle of wine to the law enforcement officers and say, "I was drinking here"?
> A. No I didn't.

¶14 The prosecutor noted some of these same issues in closing argument:

> When the police get there they find the defendant in the driver's seat with the keys in the center console, alone. None of that is controverted in this case. There's no one outside of the vehicle, and they don't see any bottles of alcohol in the car or off to the side.
> Never mentions that she drank there. Just stated that she was resting. It comes down to whether you believe the defendant's story or not.
>
> .  .  .
>
> I submit to you that at no time did she mention this bottle of wine on that evening. She just said that she thought she was in Laurel, and she was trying to get some rest. She never mentioned being terrified or being under distress to the officers that day. Never asked for their help.

. . .

I'd ask how intoxicated would you have to be to believe that you were in Laurel when you were actually in West Billings? And why not mention to the officer that you drank there?

¶15 Schaff contends on appeal that the prosecutor's questions and argument were an impermissible comment upon her exercise of her right to remain silent after receiving the *Miranda* advisory. Under *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976) it is a violation of a defendant's right to due process to allow the prosecution to use the defendant's post-*Miranda* silence to impeach the defendant's exculpatory explanation of events offered at trial. *State v. Tadewaldt*, 2010 MT 177, ¶ 21, 357 Mont. 208, 237 P.3d 1273. *Doyle* does not preclude impeaching a testifying defendant using inconsistent pre-*Miranda* statements or omissions, or from arguing the significance of a defendant's inconsistent voluntary statements. *Tadewaldt* ¶ 21; *State v. Clausell*, 2001 MT 62, ¶ 62, 305 Mont. 1, 22 P.3d 1111.

¶16 Schaff's precise argument is that the phrasing of the prosecutor's questions and argument make them a comment on post-*Miranda* silence. Since the prosecutor used words like "ever" or "at any time" Schaff contends that the questions and argument focused on both pre- and post-*Miranda* time frames without differentiation, and that this was a violation of *Doyle*. We disagree.

¶17 While the prosecutor could have framed her questions and arguments more precisely, it is clear in context that they referred exclusively to the time beginning with the officers' arrival at her vehicle and ending at the station when Schaff said she wanted

7

an attorney. While the prosecutor used the terms "ever" and "at any time," she also narrowed the context by specifying that she was asking about "when the officers got there" or by asking what Schaff had said "that evening." The questions and argument were about what Schaff told the officers who responded to the scene. The testimony firmly established that the investigation ceased at that point and there is no evidence of any other interaction between Schaff and the police.

¶18 Schaff acknowledges on appeal that it is not a violation of *Doyle* for the prosecution to inquire or argue about her pre-*Miranda* statements. In this case that would include anything that she said between the time the officers arrived at the scene and the end of the DUI inquiry when she asked for an attorney. Like the defendant in *Tadewaldt*, Schaff was not silent during this period. She told Deputy Skillen that she had parked her vehicle where it was found to get some rest; that she thought she was in Laurel, and that she had gotten out of the vehicle once to urinate and got back in without pulling up her pants. She told the officers those things, but only those things. It was the inconsistency between those statements and the elaborate stalking victim story she later told at trial that was the subject of the inquiry and argument.

¶19 When a defendant testifies at trial the State can properly use pre-*Miranda* statements to try to expose what it believes to be false testimony. *State v. Graves*, 272 Mont. 451, 460-61, 901 P.2d 549, 555 (1995) *overruled in part on other grounds*, *State v. Herman*, 2008 MT 187, 343 Mont. 494, 188 P.3d 978. The prosecutor's emphasis here was on Schaff's story, not her silence after the *Miranda* advisory. *State v. Godfrey*, 2004

8

MT 197, ¶ 37, 322 Mont. 254, 95 P.3d 166. It is "entirely proper" for the prosecutor to cross-examine a testifying defendant about inconsistencies between an initial account given to law enforcement officers and a different account given at trial. *Tadewaldt*, ¶ 22. Here the jury could not have been confused about the context of the prosecutor's questions or argument. The prosecutor did not comment upon Schaff's post-*Miranda* silence or seek to take advantage of that silence to create an inference of guilt.

¶20 Affirmed.


/S/ MIKE McGRATH


We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE