DA 11-0779

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 97

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RAMAH IRENE MCDONALD,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 10-474
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Jacob Q. Johnson, Assistant
          Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Tammy A. Hinderman,
          Assistant Attorney General; Helena, Montana

          Fred R. Van Valkenburg, Missoula County Attorney; M. Shaun Donovan,
          Deputy County Attorney; Missoula, Montana

                 Submitted on Briefs:  January 31, 2013

                            Decided:  April 10, 2013

Filed:

                            _____
                               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Ramah Irene McDonald (McDonald) appeals the judgment entered by the Fourth Judicial District Court, Missoula County, following a trial by jury that found her guilty of Assault on a Peace Officer, a felony.

¶2 McDonald raises the following issue:

¶3 *Did the prosecutor's comments during closing argument constitute plain error?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 McDonald was an inmate at the Missoula County Detention Center and became involved in a heated exchange with Detention Officer Paige Pavalone (Pavalone) over McDonald's disagreement with an instruction that she remove paper from the window of her cell that obstructed the view into the cell. Hearing the loud conversation, Detention Officers Eric Lechleitner (Lechleitner) and Michael Gauci (Gauci) stepped into the area. The matter escalated when McDonald refused to comply with the instructions of the officers to immediately report to the maximum security unit. A physical altercation ensued, wherein McDonald bit Pavalone on the arm. McDonald was charged with one count of felony assault on a police officer in violation of § 45-5-210, MCA.[1] The first trial resulted in a mistrial when the jury was unable to reach a verdict.

¶5 The case was retried to a jury on September 26-27, 2011. Pavalone testified she had been bitten by McDonald, and Lechleitner and Gauci testified that Pavalone had

[1] At the time of the altercation, McDonald had been detained pending resolution of a petition to revoke a previous sentence for felony assault. While the case *sub judice* was proceeding, McDonald's sentence in the prior case was revoked and her new sentence was affirmed by this Court in *State v. McDonald*, 2011 MT 259N, 363 Mont. 413.

yelled that she was being bitten during the altercation. Detention Officer Corey Hawkins testified that he observed a red mark with what appeared to be saliva on Pavalone's arm after the altercation. McDonald testified she had not bitten Pavalone, and Katie Garding, another inmate, testified that she did not see McDonald bite Pavalone. The prosecutor's closing arguments included the following statements:

Did Paige Pavalone get bit? She said, she got bit . . .

During the time of this incident, both Officer Gauci and Officer Lechleitner heard Paige say—stop biting me, or whatever.

.   .   .

And as you're looking at the credibility of these witnesses . . . think about these officers. . . . It would have been a very easy thing—for instance, Officer Hawkins to say—oh, sure, I heard her say something similar—but, they didn't do that. They were making a real effort to be as clear with you, as they possibly could. It's only about what they remember. But, even, with that, you have Paige Pavalone and two other officers saying that in the middle of this, she said—stop biting my arm. Why in the world—why in the world would she say that, unless that was happening to her?

.   .   .

Look at their appearance, their manner, their fairness, their candor, their intelligence. What is their interest in the outcome of the case? I'm not telling you that none of the officers care about how this case comes out. . . . *But, their interest in this is way, way, way less than the Defendant's interest in this*. She's going on trial—she's the one who would be convicted.

We don't really have anything here in terms of character and truthfulness. We have some conflicts with our statements. This instruction says the evidence from one witness, you believe, is sufficient. This case could have been the State calling one witness—Paige Pavalone. . . . If you believe her, that could be the end of the case. That's all the testimony the State would have been obligated to provide. If you believe that one witness—now, obviously, we want to provide as much we can, so we provided the other witnesses. *But, she's a completely believable witness*. Ask yourselves, as you deliberate this—what's not to believe about her testimony? It's supported by everything. . . .

¶6     During his rebuttal, the prosecutor stated:

[W]hat I'd like to do is go through some of the comments that [defense counsel] Mr. Daly made. I don't agree with his characterization that this is an overreaction, that there was too much force used—I should say, I don't personally—my personal—has nothing to do with this. It's not even proper for you to consider, but *I don't believe* the evidence shows that there was an overreaction here by officer Pavalone. *I don't believe* their evidence shows there was excessive force used. *I don't believe* that the evidence shows Ms. McDonald was injured, significantly. *I don't believe* that the evidence shows that this was a fight picked by Paige Pavalone.

. . .

Officer Pavalone's testimony—Mr. Daly says she couldn't remember much.

. . .

I don't think there's any flaw in what [Pavalone] said, that's significant. There's certainly, differences. What does that mean? That means these people didn't rehearse their testimony. They're coming in and *telling you the truth*. This isn't some story, they're telling you. They're telling you what they, honestly, remember.

(Emphasis added.)

¶7 McDonald's counsel did not object to any of these comments. The jury returned a guilty verdict. McDonald appeals.

## STANDARD OF REVIEW

¶8 "We generally do not review on appeal issues that were not raised before the district court. However, we may undertake review of such an issue under the plain error doctrine in situations that implicate a defendant's fundamental constitutional rights when failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091 (citing *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, 77 P.3d 224). The decision to invoke plain error review is a discretionary one that is to be used

4

sparingly on a case-by-case basis. *Hayden*, ¶ 17 (citing *State v. Rosling*, 2008 MT 62, ¶ 77, 342 Mont. 1, 180 P.3d 1102).

## DISCUSSION

¶9      *Did the prosecutor's comments during closing argument constitute plain error?*

¶10     Both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants the right to a fair trial by a jury. *Hayden*, ¶ 27. "A prosecutor's misconduct may be grounds for reversing a conviction and granting a new trial if the conduct deprives the defendant of a fair and impartial trial." *Hayden*, ¶ 27 (citing *Clausell v. State*, 2005 MT 33, ¶ 11, 326 Mont. 63, 106 P.3d 1175). "We consider alleged improper statements during closing argument in the context of the entire argument." *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213 (citing *State v. Roubideaux*, 2005 MT 324, ¶ 15, 329 Mont. 521, 125 P.3d 1114). "We will not presume prejudice from the alleged misconduct, rather the defendant must show that the argument violated his substantial rights." *Makarchuk*, ¶ 24 (citing *Roubideaux*, ¶ 11).

¶11     McDonald argues that the prosecutor's comments during closing arguments constitute misconduct and warrant reversal of her conviction under plain error review. She argues that the prosecutor repeatedly made direct comments about the reliability of the witnesses. Specifically, she focuses on the phrases used by the prosecutor, highlighted in the above block quotation, to describe the State's witnesses as "telling you the truth," that "their interest in this is way, way, way less than the Defendant's interest in

5

this," that Paige Pavalone was "a completely believable witness," and that the prosecutor "did not believe" McDonald's arguments.[2]  She relies primarily on our decision reversing the defendant's conviction for prosecutorial misconduct in *Hayden*.

¶12    We exercised plain error review and reversed the defendant's conviction in *Hayden* for multiple errors committed by the prosecutor.  *Hayden*, ¶¶ 31-32.  Without objection, the prosecutor asked the investigating officer about the credibility of the witnesses and elicited his impression about the credibility of the statements they had given at the time of the alleged crime.  *Hayden*, ¶ 31.  The prosecutor "went so far as to ask [the officer] directly whether he believed [the witness] was telling the truth when he was interviewed, eliciting a response that they were telling the truth in their initial statements."  *Hayden*, ¶ 31.  Noting that a witness may not comment on the credibility of another witness's testimony, we held that "[t]his line of questioning, which elicited [the officer's] opinion on the credibility of other witnesses, is unacceptable and invades the province of the jury."  *Hayden*, ¶ 31 (citing *State v. St. Germain*, 2007 MT 28, ¶ 27, 336 Mont. 17, 153 P.3d 591).

¶13    The prosecutor in *Hayden* had also "impinged on the jury's role by offering his own opinion as to witnesses' testimony during his closing argument" when he argued that the state's witnesses were "believable" and that the jury could rely upon the officer's

---

[2] As noted in the block quotation, the full text of this rebuttal comment by the prosecutor was: "I don't believe the evidence shows that there was an overreaction here by Officer Pavalone.  I don't believe their evidence shows there was excessive force used.  I don't believe that the evidence shows Ms. McDonald was injured, significantly.  I don't believe that the evidence shows that this was a fight picked by Paige Pavalone."

testimony. *Hayden*, ¶ 32. The prosecutor also improperly testified "by vouching for the efficacy of the search of Hayden's residence and by stating his opinion that a scale found in the residence was used for drugs." *Hayden*, ¶ 32. We reasoned that the prosecutor's arguments had "unfairly added the probative force of his own personal, professional, and official influence to the testimony of the witnesses." *Hayden*, ¶ 33. We concluded that the prosecutor's conduct had "invaded the role of the jury, and . . . created a clear danger that the jurors adopted the prosecutor's views instead of exercising their own independent judgment." *Hayden*, ¶ 33.

¶14 We have explained that "[d]uring closing argument, a prosecutor may comment on 'the gravity of the crime charged, the volume of evidence, credibility of witnesses, inferences to be drawn from various phases of evidence, and legal principles involved, to be presented in instructions to the jury . . . .'" *State v. Green*, 2009 MT 114, ¶ 33, 350 Mont. 141, 205 P.3d 798 (quoting *State v. Staat*, 251 Mont. 1, 10, 822 P.2d 643, 648 (1991). "While it is generally improper for the prosecution to offer *personal opinions* as to the credibility of the accused or the witnesses . . . 'it is proper for a prosecutor to comment on conflicts and contradictions in testimony, as well as to comment on the evidence presented and suggest to the jury inferences which may be drawn therefrom.'" *Green*, ¶ 33 (quoting *State v. Gladue*, 1999 MT 1, ¶ 15, 293 Mont. 1, 972 P.2d 827) (emphasis added). As noted above, we review alleged improper comments "in the context of the entire argument." *Makarchuk*, ¶ 24.

¶15     Unlike *Hayden*, the thrust of the prosecutor's comments at issue here was argument about the evidence and the instructions, rather than interjecting his personal opinion.   McDonald cites the prosecutor's repeated comment that he "did not believe" McDonald's case, but the context demonstrates he was actually arguing he "did not believe *the evidence shows*" that McDonald's assertions of Pavalone being responsible for the fight were supported.   McDonald argues that the prosecutor vouched for the State's witnesses by stating "their interest in this is way, way, way less than the Defendant's interest," but this was argument about the model criminal jury instruction that told the jury to determine whether a witness was "worthy of belief" by considering "whether the witnesses have an interest in the outcome of the case or any motive."   The prosecutor's comment about Pavalone being "completely believable" was made in the context of arguing the model instruction that the testimony of one witness, if believed, was sufficient to prove any fact in the case.   Additionally, unlike *Hayden*, the prosecutor here made no effort to personally testify about the evidence or to elicit witness testimony about the credibility of other witnesses.

¶16     Prosecutors do need to choose their words circumspectly while arguing their case to the jury.   Taken in isolation, the prosecutor's comments that Pavalone was "completely believable" and that the State's witnesses were "telling you the truth" raise facial concerns that the prosecutor was attempting to vouch for the witnesses and interject his personal opinion.   However, when viewed in context of the entire argument, the

8

comments were very brief deviations from the prosecutor's overall approach and are a far cry from the egregious conduct of the prosecutor in *Hayden*.

¶17 We do not presume that alleged prosecutorial misconduct was prejudicial, and the defendant "must show that the argument violated his substantial rights." *Makarchuk*, ¶ 24. Further, in order to exercise plain error review, this Court considers whether the "fundamental fairness of the proceedings" or "the integrity of the judicial process" is at stake. *Hayden*, ¶ 17. When an issue of prosecutorial misconduct has been properly preserved for appeal by way of a motion for mistrial or motion for new trial, the district court has discretion in its handling of the matter. This Court's review of such preserved issues is for abuse of that discretion. *See State v. Tadewaldt*, 2010 MT 177, ¶ 9, 357 Mont. 208, 237 P.3d 1273 (district court ruling on motion for mistrial for prosecutorial misconduct reviewed for abuse of discretion); *State v. Whitlow*, 285 Mont. 430, 446, 949 P.2d 239, 249 (1997) (district court ruling on motion for new trial based upon prosecutorial misconduct reviewed for abuse of discretion). We are mindful that accepting an unpreserved issue of this nature by plain error review bypasses the exercise of discretion by the district court and our proper review thereof. *See State v. Stearns*, 2008 MT 356, ¶ 19, 346 Mont. 348, 195 P.3d 794 (Generally, "[a]bsent an objection, an alleged error is not appropriate for review. . . . We will not fault a trial court where that court has no opportunity to correct itself if warranted."). In consideration of these principles, we conclude that the challenged comments made in closing argument did not

9

raise the specter of prosecutorial misconduct necessitating the exercise of plain error review to protect fundamental fairness of this proceeding.

¶18 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER


Justice Patricia O. Cotter dissents.

¶19 I dissent from the Court's Opinion.

¶20 As the Court notes, the concern we voiced in *Hayden* was that the prosecutor "unfairly added the probative force of his own personal, professional, and official influence to the testimony of the witnesses." *Hayden*, ¶ 33. We said "that it is improper for a prosecutor to offer personal opinions as to witness credibility." *Hayden*, ¶ 28. We cited *State v. Stringer*, 271 Mont. 367, 381, 897 P.2d 1063, 1072 (1995), in which we said the "Court has been unequivocal in its admonitions to prosecutors to stop improper comments and we have made it clear that we will reverse a case where counsel invades the province of the jury." *Hayden*, ¶ 28. Unfortunately, the Court now abandons this "unequivocal" high ground.

10

¶21    I agree with the Court that it is not improper for a prosecutor to comment on conflicts and contradictions in testimony. Opinion, ¶ 14. It is also acceptable to tell the jurors they have a right to believe one witness over another. The breach occurs when the prosecutor attests *personally* to the veracity of a witness, and tells the jurors whom he *personally* believes to be telling the truth. This is what occurred in *Hayden,* leading a unanimous Court to conclude that plain error was established "as the record leaves unsettled the question of the fundamental fairness of the proceedings." *Hayden,* ¶ 33. The same result is compelled here.

¶22    Our effort to distinguish *Hayden* from this case is unavailing. The prosecutor's comments were replete with his beliefs of who was telling the truth. He told the jury that *he did not believe* the evidence shows that these officers overreacted, *he did not believe* the evidence shows there was excessive force, *he did not believe* the evidence shows that McDonald was injured. He told the jury: "They're [the officers] coming in and telling you the truth." He told the jury: "[S]he's [Pavalone] a completely believable witness." How is this different from *Hayden*, in which we faulted the prosecutor for telling the jury that the social worker and the detective are "believable" and that the jury could rely on those witnesses? It isn't, the Court's strained distinctions notwithstanding. As we said in *Hayden*, "[i]t is for the jury, not an attorney trying a case, to determine which witnesses are believable and whose testimony is reliable." *Hayden*, ¶ 32.

¶23    In *State v. Arlington*, 265 Mont. 127, 875 P.2d 307 (1994), we were asked to exercise plain error review after the prosecutor commented on the credibility of the

11

defendant, among other alleged errors. We concluded that the prosecutor did commit error in making such comments but declined to reverse because the evidence against Arlington was "overwhelming." *Arlington*, 265 Mont. at 158, 875 P.2d at 325. However, we observed that had there not been overwhelming evidence of Arlington's guilt, "the prosecution in this case might well be looking forward to a new trial by reason of the prosecutor's comments." *Arlington*, 265 Mont. at 158, 875 P.2d at 325.

¶24 Here, the evidence against McDonald was anything but "overwhelming." As the Court notes, in fact, the first trial of this case ended with a hung jury. Opinion, ¶ 4. At the close of this trial, the prosecutor acknowledged that a photograph of the officer's arm "doesn't really show much of anything." There being no direct evidence that Pavalone had been bitten, the entire case therefore boiled down to whom the jury would believe—McDonald and her supporting witness, or Pavalone and her supporting witnesses. The prosecutor wrongly inserted himself into this critical determination by telling the jurors which witnesses were believable. It is precisely this type of close case that presents "a clear danger that the jurors adopted the prosecutor's views instead of exercising their own independent judgment." *Hayden*, ¶ 33.

¶25 We err in ignoring our well-reasoned analysis in *Hayden* and condoning this prosecutor's repeated invasion of the province of the jury with his personal opinions of witness veracity. I would reverse and remand for a new trial.

/S/ PATRICIA COTTER