FILED

05/30/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0124

DA 15-0124

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 127

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

JEFFREY BRUCE LACKMAN,

> Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DC 13-98
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> Chad Wright, Chief Appellate Defender, Koan Mercer, Assistant Appellate
> Defender, Helena, Montana

> For Appellee:

> Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
> Assistant Attorney General, Helena, Montana

> Eileen Joyce, Silver Bow County Attorney, Samm T. Cox, Deputy County
> Attorney, Butte, Montana

> Submitted on Briefs: April 19, 2017
> Decided: May 30, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    A Silver Bow County jury convicted Jeffrey Lackman of deliberate homicide after he shot Mark Partelow, an acquaintance, in the head following a brief fight in Butte, Montana. Lackman raises three issues on appeal, which we restate as follows:

*1. Whether the District Court abused its discretion in instructing the jury on Lackman's justifiable use of force defense.*

*2. Whether the prosecutor's comments regarding Lackman's failure to tell police his self-defense story constitute plain error.*

*3. Whether the prosecutor's misstatement of the legal elements for justified use of lethal force constitutes plain error.*

¶2    We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3    Partelow and Lackman got in a fight when Lackman went to Partelow's home to pick up some personal belongings. Partelow punched Lackman two or three times before Lackman pulled out his gun and shot him. Lackman fled the scene with his girlfriend and another friend, Juan Jose Romero. Lackman wiped the gun down and Romero hid the gun north of Butte. Everyone involved had been using methamphetamine.

¶4    A highway patrol trooper arrested Lackman near Roundup the next night after stopping a car in which Lackman was a passenger. Two officers transported Lackman back to Butte. The officers did not interrogate Lackman during the transport, but Lackman asked them how difficult it would be to prove self-defense. The record does not reflect whether Lackman had received *Miranda* warnings.

2

¶5    Lackman gave notice prior to trial of his intent to raise the affirmative defense of justifiable use of force. He testified at trial that he shot Partelow in self-defense. Lackman stated that he had heard stories about Partelow "pulling knives on people" and beating them "really severely, even to the point of death." He testified further that he was scared during the fight because he thought Partelow was going to "kill me or at least severely beat me." During cross-examination, the State questioned Lackman about his self-defense story and asked if he had told anyone that "story until today." There was no objection.

¶6    Lackman requested that the jury be instructed that lethal force could be used "to prevent the commission of a forcible felony." Section 45-3-102, MCA. The District Court refused this instruction. The court reasoned that there was no evidence presented of a forcible felony "other than the attack on Mr. Lackman personally," and that the instruction proposed by the State adequately addressed that offense. The court reasoned further that Lackman's instruction could potentially confuse the jury. The court instructed the jury that a person is justified in the use of deadly force "only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself."

¶7    In her closing argument, the prosecutor repeated the law of justifiable use of force as given in the jury instruction. The prosecutor then stated that a person has "to have a reasonable belief that your life is in jeopardy to be able to take someone else's and be justified in doing so." Defense counsel did not object. Instead, she used her closing argument to correct the prosecutor's misstatement of the law. She emphasized, "We don't have to let ourselves get beat up and get serious bodily injury" in order to be justified in

3

the use of force.  The jury convicted Lackman.  The District Court sentenced him to ninety years in prison.  Lackman appeals.

## STANDARDS OF REVIEW

¶8     This court reviews for correctness the legal determinations a lower court makes when giving jury instructions, including whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law.  *State v. Carnes*, 2015 MT 101, ¶ 6, 378 Mont. 482, 346 P.3d 1120.  District courts are given broad discretion when instructing a jury; reversible error occurs only if the instructions prejudicially affect a defendant's substantial rights.  *Carnes*, ¶ 6.  A district court's decision on jury instructions is presumed correct, and the appellant has the burden of showing error.  *Carnes*, ¶ 6.

¶9     This Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made, under plain error review.  *State v. Godfrey*, 2004 MT 197, ¶ 22, 322 Mont. 254, 95 P.3d 166. We exercise plain error review where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.  *Godfrey*, ¶ 22.  We use our inherent power of common law plain error review sparingly, on a case-by-case basis, and only in this narrow class of cases.  *Godfrey*, ¶ 22.

4

## DISCUSSION

¶10 *1. Whether the District Court abused its discretion in instructing the jury on Lackman's justifiable use of force defense.*

¶11 The District Court submitted three instructions to the jury on justifiable use of force.

Instruction No. 22 provided:

> A person is justified in the use of force or threat to use force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.
>
> However, a person is justified in the use of force which is intended or likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself.

Instruction No. 23 provided:

> If the Defendant has offered evidence of justifiable use of force, the State has the burden of proving beyond a reasonable doubt that the Defendant's actions were not justified.
>
> If you find that he/she has offered evidence of justifiable use of force, but that the State has failed to prove beyond a reasonable doubt that the Defendant's actions were not justified, you must find the Defendant not guilty.

And Instruction No. 24 provided:

> The Defendant has offered evidence of justifiable use of force in this case. You are to consider the following requirements of the law in determining whether the use of force claimed by Defendant was justified:
>
> > [1] The danger of harm to the Defendant must be a present one and not made by a person without the present ability to carry out the threat;
> >
> > [2] The force threatened against the Defendant must be unlawful;
> >
> > [3] The Defendant must actually believe that the danger exists, that is, use of force is necessary to avert the danger and that the kind and amount of force which defendant uses is necessary;

5

[4] The Defendant's belief, in each of the aspects described, must be reasonable even if it is mistaken.

[5] A person who is lawfully in a place or location and who is threatened with bodily injury or loss of life has no duty to retreat from a threat, or summon law enforcement assistance prior to using force.

Even if you determine the use of force by Defendant was not justified, the state still has the duty to prove each of the elements of the crime charged beyond a reasonable doubt.

¶12 Lackman takes issue with Instruction No. 22. He points out that § 45-3-102, MCA—upon which the instruction is based—justifies the use of lethal force "where a defendant reasonably believes that the force is necessary *either* to prevent death or serious bodily harm *or* to prevent a forcible felony." Lackman also observes that § 45-3-101(2), MCA, in turn, defines a "forcible felony" as "any felony which involves the use or threat of physical force or violence against any individual." Lackman asserts that both aggravated assault (§ 45-5-202(1), MCA) and assault with a weapon (§ 45-5-213(1), MCA) are forcible felonies that can be accomplished by creating a "reasonable apprehension of serious bodily injury."

¶13 Lackman thus argues that under the forcible felony provision of § 45-3-102, MCA, "a person can be legally justified in the use of lethal force to prevent an attacker from creating reasonable apprehension of serious bodily injury . . . even if actual serious bodily injury is not imminent." Because Lackman's use of force was the main question at trial, and under his reading the forcible felony standard "is a more expansive standard for justified use of lethal force than requiring imminent serious bodily injury," Lackman argues that the District Court "misstated the law and lessened the State's burden to prove that [his]

6

force was not justified." Lackman asserts that the District Court therefore abused its discretion by not including "forcible felony" in Instruction No. 22.

¶14 In exercising its "broad discretion in formulating jury instructions," a district court "must instruct the jury on each theory which is supported by the record." *State v. Archambault*, 2007 MT 26, ¶ 25, 336 Mont. 6, 152 P.3d 698. This does not mean, however, that a defendant is "entitled to have the jury instructed on every nuance of his or her theory of the case." *Archambault*, ¶ 25. We will thus uphold jury instructions so long as the instructions "fully and fairly instruct the jury regarding the applicable law." *Archambault*, ¶ 25. The applicable law here begins with § 45-3-102, MCA. It provides:

> A person is justified in the use of force or threat to use force against another when and to the extent that the person reasonably believes that the conduct is necessary for self-defense or the defense of another against the other person's imminent use of unlawful force. However, the person is justified in the use of force likely to cause death or serious bodily harm only if the person reasonably believes that the force is necessary to prevent imminent death or serious bodily harm to the person or another or to prevent the commission of a forcible felony.

Section 45-3-102, MCA. Because it is an affirmative defense, Lackman had the "initial burden" of producing evidence that his use of lethal force was justified. *State v. Erickson*, 2014 MT 304, ¶ 25, 377 Mont. 84, 338 P.3d 598.

¶15 We construe § 45-3-102, MCA, "according to the plain meaning" of its language. *State v. Price*, 2002 MT 229, ¶ 47, 311 Mont. 439, 57 P.3d 42. Lackman's argument that § 45-3-102, MCA, authorizes the use of lethal force "to prevent the commission of a forcible felony" is correct as far as it goes. Predicate, however, is the first sentence of § 45-3-102, MCA, which authorizes "the use of force" only "when and to the extent that the

7

person reasonably believes that the conduct is necessary for self-defense . . . against the other person's *imminent use of unlawful force*." Section 45-3-102, MCA (emphasis added); *see State v. Dahms*, 252 Mont. 1, 13-14, 825 P.2d 1214, 1222 (1992) (noting that "the term 'imminent' does not refer to any element of felony assault, but applies to the justifiable use of force"). We have held that § 45-3-102, MCA, "allows a person to use force to defend himself or herself in a degree commensurate with the threat of harm the person faces." *Archambault*, ¶ 15 (quoting *State v. Stone*, 266 Mont. 345, 347, 880 P.2d 1296, 1298 (1994)) (internal quotations omitted); *accord State v. Miller*, 1998 MT 177, ¶ 28, 290 Mont. 97, 966 P.2d 721 (concluding that "the degree of force a person uses to defend himself must be commensurate with the threat of harm the person faces"). Under the statute's plain language, Lackman was justified in using force against Partelow—including lethal force—only if Lackman reasonably believed that Partelow's use of unlawful force against him was imminent, and if the force he used in response was commensurate to Partelow's threat of force.

¶16    As the District Court concluded, the evidence did not support the theory behind Lackman's requested instruction. At the time Lackman shot Partelow, only he and Partelow were engaged in a fight. Lackman did not testify—and the evidence does not show—that Lackman shot Partelow to protect anyone other than himself. Multiple witnesses testified that the fight between Lackman and Partelow had gone on for only a short time when Lackman shot Partelow. Lackman testified that Partelow hit him "[t]wo or three times" and that he did not hit Partelow. Lackman testified that he had heard stories about Partelow "pulling knives on people" and beating them "really severely, even to the

8

point of death." He did not testify to seeing any weapon. Lackman said that the reason he shot Partelow was because he thought Partelow was going to "kill me or at least severely beat me."

¶17 Lackman's own testimony demonstrates that he shot Partelow because he believed it was "necessary to prevent imminent death or serious bodily harm" to himself. Section 45-3-102, MCA. The District Court concluded correctly that "the only forcible felony we're talking about is seriously [sic] bodily injury that would be inflicted against Mr. Lackman." The three justifiable use of force instructions therefore fully and fairly instructed the jury regarding the law applicable to Lackman's defense. We will not fault the District Court for refusing to instruct the jury "on every nuance of [Lackman's] theory of the case." *Archambault*, ¶ 25. We conclude that the District Court did not abuse its discretion in instructing the jury on Lackman's justifiable use of force defense without including the "forcible felony" component.

¶18 *2. Whether the prosecutor's comments regarding Lackman's failure to tell police his self-defense story constitute plain error.*

¶19 During its case-in-chief, the State questioned one of the officers who transported Lackman back to Butte following his arrest. The prosecutor asked the officer if Lackman had asked any questions during the ride. The officer testified, "One time Mr. Lackman asked me how hard it would be to prove a self-defense case." During his direct examination, Lackman admitted to making the statement and testified that he asked the question "[b]ecause I knew what happened, but I didn't trust—I don't know. I was scared that I wouldn't be able to prove my case."

9

¶20    He testified further on direct that he did not call the police after shooting Partelow because, "I was doing drugs at the time, and I was afraid they wouldn't believe me." He agreed that it was his "natural instinct to run from trouble." During Lackman's cross-examination, the prosecutor followed up on this line of questioning:

Q. And I believe [defense counsel] asked you if your natural instinct is to run?

A. Yes.

Q. Away from trouble?

A. Yes.

Q. If you're justified, why are you in trouble?

A. Because I don't really have—I don't—didn't think that the police would believe me.

Q. Would believe what?

A. My story.

Q. Your story. Your story was that this man was going to kill you and you had to kill him?

A. Yes. That he was attacking me.

Q. And I think [defense counsel] put it in her opening that you had no other choice?

A. Yes.

Q. And you thought the police wouldn't believe you?

A. I didn't know if they would believe me or not.
Q. Did you ever tell them—or the police your story?

A. No, I didn't.
Q. Nobody's heard your story until today; is that correct?

10

A.  Until today.

Defense counsel did not object to this line of questioning.

¶21     In her closing argument, defense counsel emphasized Lackman's belief that the police would not believe his self-defense story.  She opened her argument by stating:

> "How do you prove a self-defense case?  How hard is it to prove a self-defense case?"  Those were the thoughts that were going through Jeff Lackman's mind when he was arrested.  How does he go before someone and convey what it was like to have to make the ultimate decision, the decision to defend yourself from serious bodily injury or death, and that by defending yourself you shot someone.

During rebuttal, the prosecutor addressed defense counsel's argument:

> And then [defense counsel] asked you, put yourself—or don't put yourself— why Mr. Lackman would be asking how hard it is to prove self-defense.  Ask yourself what the answer is.  I suggest when you're in the back of the cop car, you're going to find something else up.  Because you weren't successful in the first time of events, which is to run and get away.  So how hard is it to prove self-defense?  And if it's self-defense, why don't you tell anybody?  I can understand maybe that there's some apprehension with law enforcement.  But when his girlfriend [who witnessed the shooting] asked him, "How could you do that, why did you do that," he didn't say it was self-defense, did he?  He didn't answer her.  He didn't tell Romero.  He didn't call anybody.  He didn't do this until the gig was up and until he was in the back of a police car and he comes up with how hard is it to prove self-defense.

Defense counsel once again did not object.

¶22     Lackman argues that the State improperly introduced and commented upon his failure to tell police his self-defense story.  He asserts that his claims warrant plain error review because they implicate his "fundamental constitutional rights and failure to review the claims would result in a manifest miscarriage of justice and leave unsettled the fundamental fairness of [his] trial."  Evidence of his silence, Lackman contends, violated

11

M. R. Evid. 403 because the risk of unfair prejudice outweighed the evidence's probative value. Moreover, Lackman asserts, use of his silence to create an inference of guilt also violated his rights under the Montana Constitution. Lackman acknowledges that this Court has concluded that the State does not violate a defendant's rights by commenting on the defendant's silence prior to being given *Miranda* warnings. *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996), *rev'd in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. Nevertheless, Lackman urges us to follow other courts in holding that the State violates a defendant's rights by commenting on the defendant's silence regardless whether he has received *Miranda* warnings.

¶23 "It is well established that impeachment use of a defendant's silence after arrest and after receiving *Miranda* warnings is a violation of due process." *State v. Morsette*, 2013 MT 270, ¶ 35, 372 Mont. 38, 309 P.3d 978 (citing *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 2245 (1976)). Equally well established, it does not violate "'due process of law for a State to permit cross-examination as to postarrest [pre-*Miranda*] silence when a defendant chooses to take the stand.'" *Finley*, 276 Mont. at 139, 915 P.2d at 216 (quoting *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S. Ct. 1309, 1312 (1982)); *accord State v. Schaff*, 2011 MT 19, ¶ 15, 359 Mont. 185, 247 P.3d 727 (concluding that "*Doyle* does not preclude impeaching a testifying defendant using inconsistent pre-*Miranda* statements or omissions"); *State v. Clausell*, 2001 MT 62, ¶ 61, 305 Mont. 1, 22 P.3d 1111 (concluding that the "*Doyle* rule is limited to only those instances where the prosecution seeks to impeach a defendant's testimony based on silence after *Miranda* warnings were given").

¶24　We are unpersuaded that Lackman's claims warrant plain error review. After shooting Partelow, Lackman fled the scene with his girlfriend and Romero. While they were driving, his girlfriend asked, "How could you do—how could you do that? What—why would you do that?" Lackman did not respond. He spent hours in the car with Romero after fleeing the crime scene. During all that time, he never made mention of having acted in self-defense. Lackman took the stand and testified that he did not call the police after shooting Partelow because he "was afraid they wouldn't believe [him]." During its cross-examination, the State followed up on this line of questioning, with Lackman confirming that he did not tell police his story because he thought the police would not believe him. In the context of the questioning, the prosecutor's next question—"Nobody's heard your story until today; is that correct?"—relates to Lackman's prearrest silence. Similarly, considered in context, the prosecutor's comment in rebuttal closing argument that Lackman failed to tell anybody his self-defense story "until the gig was up and until he was in the back of a police car" relates to his prearrest silence.

¶25　To the extent that the prosecutor's comments can be characterized as relating to Lackman's post-arrest silence, it is undisputed that the record does not reflect whether Lackman was given *Miranda* warnings. We have held consistently that use of a defendant's post-arrest, pre-*Miranda* silence to impeach a defendant's testimony does not violate due process. *Schaff*, ¶ 15; *Clausell*, ¶ 61; *Finley*, 276 Mont. at 139-40, 915 P.2d at 216-17. In light of our case law, we conclude that Lackman's claims do not warrant plain error review because he has not demonstrated that the State violated his fundamental rights by commenting upon his failure to tell police his self-defense story. We therefore decline

13

to address his argument that the Court should extend *Doyle* to a defendant's pre-*Miranda* silence.

¶26    *3. Whether the prosecutor's misstatement of the legal elements for justified use of lethal force constitutes plain error.*

¶27    During her closing argument, the prosecutor emphasized that the jury should not focus on Lackman's "version of self-defense, but what the law is." The prosecutor continued:

> And Judge Newman just read you the law that you should be focusing on here. A person is justified in the use of force or threat to use force, and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. However, a person is justified in the use of force which is intended or likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily injury.

Later in her argument, the prosecutor made the following statement regarding justifiable use of force:

> You have to apply what you have heard in this case to the law. And you need to determine and—look at that jury instruction on self-defense, and you need to determine what is reasonable, what belief is reasonable. You have to have a *reasonable belief that your life is in jeopardy to be able to take someone else's and be justified in doing so*.

(Emphasis added).

¶28    Defense counsel did not object to the prosecutor's misstatement of the law. Defense counsel used her closing argument, however, to correct the misstatement. She clarified:

> [T]he law does not say that you can only use deadly force if there's the threat of death. It's also serious bodily injury. You'll have those instructions. Look at them. He did exactly to the extent what he needed to do to save himself.

14

> Self-defense has been a concept accepted by the law forever, as far as I know. That has been granted to all of us, that we can defend ourselves. We don't have to let ourselves get beat up and get serious bodily injury. We don't have to allow ourselves to die. We get to defend ourselves. That is the right of each of you, and it was his right. And he exercised that right. . . .

Defense counsel used the phrase "serious bodily injury" six times during her closing argument.

¶29 Lackman contends that the prosecutor's misstatement of the law of justifiable use of force violated his right to due process and therefore warrants plain error review. He asserts that the prosecutor's misstatement prejudiced his right to a fair trial because it "was the lynchpin of the State's persuasive closing argument." The State concedes that the prosecutor misstated the law but argues that the prosecutor's misstatement "did not render [Lackman's] trial fundamentally unfair or his conviction a manifest miscarriage of justice."

¶30 We exercise plain error review "sparingly on a case-by-case basis." *State v. McDonald*, 2013 MT 97, ¶ 8, 369 Mont. 483, 299 P.3d 799. "We will not presume prejudice from" the prosecutor's misstatement during closing argument; Lackman bears the burden of showing that the prosecutor's misstatement "violated his substantial rights." *McDonald*, ¶ 10 (citation and internal quotations omitted). We view the prosecutor's misstatement "during closing argument in the context of the entire argument" in determining whether the prosecutor's comments violated Lackman's substantial rights. *McDonald*, ¶ 10 (citation and internal quotations omitted).

¶31 Although the prosecutor misstated the law, she correctly stated the law early in her closing argument. Immediately prior to her misstatement, she encouraged the jury to "look at that jury instruction on self-defense." Thus, "in the context of the entire argument," we

15

cannot conclude that the prosecutor's misstatement violated Lackman's substantial rights. *McDonald*, ¶ 10. Moreover, defense counsel made a seemingly strategic decision not to object to the prosecutor's misstatement. Defense counsel emphasized during her closing argument that the threat of serious bodily injury justifies the use of deadly force. She pointed out the prosecutor's misstatement of the law and used it to Lackman's advantage. Lackman has not met his burden of showing that failure to review the prosecutor's closing argument may result in a manifest miscarriage of justice or call into question the fundamental fairness of his trial. Accordingly, we conclude that there was no plain error.

**CONCLUSION**

¶32 We affirm Lackman's deliberate homicide conviction.


/S/ BETH BAKER


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JIM RICE