No. 05-247

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 172

ST. PETER & WARREN, P.C.,

        Plaintiff and Appellant,

    v.

LINDA PURDOM and A. THOMAS TENEBAUM,
Trustees of the BMB Family Trust, NORWEST BANK
N.A.,

        Defendants and Respondents.


APPEAL FROM:    The District Court of the Fourth Judicial District,
                   In and For the County of Missoula, Cause No. DV 2002-157,
                   Honorable Ed McLean, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Samuel M. Warren, St. Peter & Warren, P.C., Missoula, Montana

                Richard P. DeJana, Attorney at Law, Kalispell, Montana

        For Respondents:

                Paul A. Sandry, Johnson, Berg, McEvoy & Bostock, PLLP,
                Kalispell, Montana (Purdom)

                Matthew B. Thiel, Smith & Thiel Law Offices, Missoula,
                Montana (Tenenbaum)

                Gregory G. Schultz, Law Offices of Gregory Schultz, P.C.,
                Missoula, Montana (Bank)


                        Submitted on Briefs:  January 18, 2006

                                   Decided:  July 25, 2006

Filed:

                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 St. Peter & Warren, P.C. (the Firm), appeals the order entered in the Fourth Judicial District Court, Missoula County, granting summary judgment to the Respondents and denying the Firm's motion to compel discovery of attorney-client communications. We affirm.

¶2 We consider the following issues on appeal:

¶3 Did the District Court err in granting the Respondents' motions for summary judgment?

¶4 Did the District Court err in denying the Firm's motion to compel discovery of attorney-client communications?

BACKGROUND

¶5 The Firm represented Monika Bates (Bates) in her dissolution of marriage action and in other matters from March 5, 1996, until November 10, 1998, when Bates terminated the Firm's services. The following day, the Firm filed a notice in the dissolution action and in two other related actions that it had a lien on Bates's assets to secure payment for $142,489.70 in attorney fees that the Firm alleged Bates owed it. The Firm's efforts to collect its fees in the three cases were to no avail.

¶6 On November 12, 1998, the court issued a divorce decree in which Bates was awarded $400,000 from a trust account held by Norwest Bank, now known as Wells Fargo Bank (Bank). The Firm subsequently brought a collection action against Bates; against the Trustees of the trust account, Linda Purdom and A. Thomas Tenenbaum

2

(collectively, Trustees); and against the Bank. The Bank immediately placed a "hard hold" on the account, disallowing disbursals without the approval of Bradley Wilson (Wilson), counsel for the Bank. Wilson filed with the court an affidavit dated February 23, 1999, in which he stated that the "funds held in [the trust account at the Bank] are capable of delivery upon further Order of the Court in this matter." However, the court denied the Firm's motion to deposit the trust fund monies with the court pursuant to § 25-8-101, MCA, and ultimately dismissed all claims against the Trustees and the Bank on June 17, 1999, for failure to state a viable claim. Bates remained a defendant in the collection action.

¶7 On October 12, 2001, Bates filed a bankruptcy action seeking, in part, discharge of the Firm's lien. Though the court did not discharge the lien, the status of the Firm's efforts to collect from Bates is unclear from the record before us.

¶8 In a letter dated June 25, 1999, Paul Sandry (Sandry), counsel for the Trustees, sent the Trustees a letter regarding the Bank's willingness to release the funds in the trust account pursuant to the dissolution decree and the dismissal of the claims in the collection action. However, though the Bank did remove the "hard hold" on the account, it did not release the funds at that time because it was a party to another action involving Bates in which the plaintiff therein asserted a claim to the trust account funds. The court dismissed the Bank from that case on March 30, 2000. On April 4, 2000, the Bank, having been dismissed from all relevant litigation and upon the request of the Trustees,

3

disbursed the remaining funds of the trust account to Bates in accordance with the divorce decree.

¶9 The Firm initiated the present action on February 14, 2002, against the Trustees and the Bank (collectively, Respondents). The amended complaint asserted claims of breach of duty, conversion, malice, actual fraud, and punitive damages. At some uncertain time, the Firm came into possession of the June 25, 1999, letter from Sandry to the Trustees, though it is unclear how the Firm obtained the letter. In its order dated February 15, 2005, the District Court granted the Respondents' motions for summary judgment, denied the Firm's motion for partial summary judgment, and denied the Firm's motion to compel discovery of attorney-client communications between the Trustees and their attorneys.

¶10 At no time did the Firm obtain a judgment on the lien or a prejudgment attachment of the trust account.

¶11 The Firm appeals the February 15, 2005, order in relation to conversion and compelling discovery, but it has abandoned the breach of duty, malice, actual fraud, and punitive damages claims by failing to present arguments thereon.

STANDARD OF REVIEW

¶12 This Court articulated the standard of review of a grant of summary judgment in *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, ¶ 14, 119 P.3d 47, ¶ 14 (citations and quotation marks omitted):

> This Court's review of a district court's grant of summary judgment is *de novo*. Our evaluation is the same as that of the trial court. We apply

4

the criteria contained in Rule 56, M.R.Civ.P. According to this rule, the moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. If this is accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. If the court determines that no genuine issues of fact exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

¶13 We review a district court's conclusions of law for correctness and its findings of fact for clear error. *Galassi v. Lincoln County Bd. of Comm'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, ¶ 7, 80 P.3d 84, ¶ 7.

¶14 "We review a district court's ruling on discovery matters to determine whether the district court abused its discretion." *In re Estate of Bolinger*, 1998 MT 303, ¶ 24, 292 Mont. 97, ¶ 24, 971 P.2d 767, ¶ 24.

## DISCUSSION

¶15 **Did the District Court err in granting the Respondents' motions for summary judgment?**

¶16 The Firm argues that the Bank, via the affidavit of its counsel Wilson, "affirmatively promised" that it would hold the trust account funds until "further order of the Court." The Firm contends that by later distributing the funds to Bates the Bank "conspired" with the Trustees to "defeat[] the Plaintiff's lien, converting its interest therein."

¶17 The Respondents argue that the Bank and the Trustees were bound by the dissolution decree and their respective responsibilities to distribute the funds to Bates upon notification that they had been dismissed as parties to all relevant court proceedings.

5

The Respondents dispute the Firm's construction of Wilson's affidavit, noting that he stated that the funds "were capable of delivery," which they argue is different from promising that the funds would not be delivered until ordered to do so by the court. Further, the Respondents assert that they would have been in dereliction of their duties had they continued to hold the trust account funds because the Firm had obtained neither a judgment on its lien nor a prejudgment attachment of the account.

¶18    Section 37-61-420(2), MCA, provides that trial attorneys have liens for the services they render:

> From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim which attaches to a verdict, report, decision, or judgment in his client's favor and the proceeds thereof in whose hands they may come.

An attorney may assert such a lien either prior to judgment or after a judgment has obtained.  *See Bekkedahl v. McKittrick*, 2002 MT 250, ¶ 16, 312 Mont. 156, ¶ 16, 58 P.3d 175, ¶ 16.  Further,

> The lien . . . provides security for the payment to the attorney of his client's contractual obligation to pay him for services.  [Citation omitted.]  Such lien does not change the nature of the underlying contractual obligation upon a stranger to the attorney's employment contract to pay the attorney for his services.

*Sisters of Charity of Providence v. Nichols* (1971), 157 Mont. 106, 111, 483 P.2d 279, 282 (*Nichols*).

¶19    In *King v. Zimmerman* (1994), 266 Mont. 54, 60, 878 P.2d 895, 899, we described the tort of conversion:

6

Conversion requires property ownership [by the plaintiff], the owner's right of possession, and the unauthorized control over the property by another resulting in damages. [Citation omitted.] However, in an action for conversion, "property ownership" does not mean that the plaintiff must have absolute or unqualified title to the property in question, but rather that he or she must have an interest in the property and the right to possess the property at the time of the alleged conversion. [Citation omitted.] Ordinarily, an immediate right to possession at the time of conversion is all that is required to enable a plaintiff to maintain an action.

¶20 The Firm has failed to establish that the Bank and the Trustees converted its lien. Though we acknowledge the Firm's contentions that "[t]here is no dispute that both the Bank and the Trustees had actual notice of the Attorney Lien" and that "there is no dispute as to the validity of Plaintiff's lien," without more, these do not state a claim for conversion. Regardless of the accuracy of these statements, the Bank and the Trustees were under no legal obligation to refrain from disbursing money that they would ordinarily disburse pursuant to their respective fiduciary duties without an order or writ from a court. A mere assertion of a lien by a law firm does not suffice to defeat the fiduciary duties incumbent upon a bank or upon trustees. By failing to secure a writ of prejudgment attachment of the account, *see* § 27-18-101 et seq., MCA, or to foreclose the lien against Bates and obtain an order to execute the judgment against the account, *see* § 25-13-101 et seq., MCA, the Firm had no right to demand that the Bank or the Trustees refrain from carrying out their duties to their constituencies. Likewise, without a judgment fixing the debt that Bates owes to the Firm (if any) and without a writ executing that judgment upon the trust account funds, the Firm cannot establish either its ownership of the funds or its right to possession of them. Thus, the elements of conversion have not

7

been met as against either the Bank or the Trustees. As the Bank states, "It were as though the firm thought that it could indefinitely tie up the funds, owned by a third-party and subject to a District Court Decree to disburse, simply by mentioning an alleged lien." This the Firm cannot do. *See Nichols*, 157 Mont. at 111, 483 P.2d at 282. Therefore, we conclude that the District Court did not err by granting summary judgment to the Respondents.

¶21 **Did the District Court err in denying the Firm's motion to compel discovery of attorney-client communications?**

¶22 The Firm argues that the disclosure to the Firm of the June 25, 1999, letter from Sandry to the Trustees was voluntary and, further, was sufficient to waive attorney-client privilege as to all communications between the Trustees and their attorneys. The Trustees reply that the Firm has failed to make a threshold showing that the disclosure was voluntary and that even if the disclosure was voluntary the privilege was waived only as to the letter itself.

¶23 In *State v. Statczar* (1987), 228 Mont. 446, 452-53, 743 P.2d 606, 610, we described waiver of the attorney-client privilege:

> Waiver is defined as the intentional or voluntary relinquishment of a known right or conduct which implies relinquishment of a known right. [Citation omitted.] The burden of establishing waiver of the privilege is on the party seeking to overcome the privilege. [Citation omitted.] Two elements must be considered when a court reviews the waiver of an attorney-client privilege: (1) the element of a client's implied intention and (2) the element of fairness and consistency. [Citation omitted.]

8

An implied waiver must be supported by evidence showing that [the client], by words or by conduct, has impliedly forsaken his privilege of confidentiality with respect to the communication in question.

¶24 Here, other than the fact that the Firm has somehow obtained the letter, the Firm cites no evidence to establish that the letter was voluntarily disclosed. The Firm asserts that either the Trustees or Sandry "caused such letter to be disclosed to third parties where it was discoverable," but it cannot demonstrate which party disclosed the letter or whether the disclosure was inadvertent or intentional. Under these circumstances, we cannot conclude that the Trustees voluntarily disclosed privileged information. *See Pacificorp v. Dep't of Revenue* (1992), 254 Mont. 387, 396-97, 838 P.2d 914, 919 ("the mere inadvertent production itself is not enough to establish voluntary relinquishment of a known right"). Accordingly, we conclude that the District Court did not abuse its discretion by denying the Firm's motion to compel discovery of attorney-client communications.

## CONCLUSION

¶25 For the foregoing reasons we conclude that the District Court did not err by granting the Respondents' motions for summary judgment or by denying the Firm's motion to compel discovery of attorney-client communications.

¶26 Affirmed.


/S/ JIM RICE

9

We concur:


/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS