FILED

10/05/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0371

DA 19-0371

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 256

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MICKEY RODNEY PAYNE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-713
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Laura M. Reed, Attorney at Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Christopher A. Morris,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  August 18, 2021

Decided:  October 5, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Mickey Rodney Payne (Payne) appeals from his bail-jumping conviction following a bench trial in the Thirteenth Judicial District Court. He challenges the District Court's granting of the State's *Gillham* motion to allow his former attorney to testify, and contends he received ineffective assistance of counsel by his former attorney's testimony and by the attorney's decision not to file a motion to continue the trials in Payne's underlying criminal matters, leading to the instant bail-jumping charge.

¶2 We affirm and address these issues:

1. *Did the District Court err by allowing Payne's former attorney to testify as a state witness in his bail-jumping trial, and did the testimony violate Payne's right to effective assistance of counsel?*

2. *Alternatively, did Payne receive ineffective assistance of counsel when his former attorney failed to file a motion to continue the date of his trials in the underlying criminal cases?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Payne was charged with four counts of criminal mischief and one count of felony partner family member assault (PFMA), in violation of § 45-6-101, MCA, and § 45-5-206, MCA, respectively. Two separate trials were set—one for the criminal mischief charges, DC 15-517, and one for the PFMA charge, DC 16-170. After multiple continuances, both trials were ultimately scheduled for July 19, 2016. On or about June 1, Payne was assigned new counsel, Lane Scheveck (Scheveck).

¶4 Payne's bail release conditions required him to remain in Montana but, in violation thereof, he traveled to California. Payne remained in California through July 19, 2016, and

2

did not appear for his scheduled trials. Scheveck appeared alone on July 19 and made the following statement to the District Court:

> Your Honor . . . I've had some communication with my client to the extent of trial. *He has been informed of this hearing. Your Honor, he's informed me that he would not be here today, and I've talked to the [p]rosecution about this*, they are well aware of Mr. Payne has…to the extent where he even -- he even called the [p]rosecution, asked them what's going on. *I've been in contact with my client.* That's all the information I can give you at this time. [(Emphasis added.)]

¶5 Thereafter, Payne was charged with two counts of bail-jumping in violation of § 45-7-308, MCA, one count for each scheduled trial he missed. Nicole Gallagher (Gallagher) was assigned as Payne's counsel for these charges and a bench trial was held on August 29, 2018. The State subpoenaed Scheveck to testify, and Scheveck responded by filing a motion to quash the subpoena. The possibility of Scheveck's testimony was raised at the beginning of the trial, and the State indicated an intention to call him as a rebuttal witness only if Payne testified in his own defense. Gallagher responded, "[w]e are still going to object to Mr. Scheveck's testimony regardless of any rebuttal witness categorization. Mr. Payne is the one that holds the privilege, and he does not waive that privilege." The District Court reserved ruling on the admissibility of Scheveck's testimony pending the State's call at trial.

¶6 During the trial, Payne elected to testify. The District Court excused the prosecution from the courtroom and addressed Payne and his counsel, first instructing Payne that he had the absolute right not to testify. The District Court then further warned Payne that his testimony could lead to waiver of the attorney-client privilege:

3

[T]here's a distinct possibility that you will waive the attorney-client privilege, and what I want you to understand is, is that on the attorney-client privilege, you can't just open that door a little bit; if you open that door a little bit, you open it the whole way as to the topic that the privilege applies so I just want to make sure that you had adequate opportunity to discuss these ramifications with your counsel; have you, sir?

Payne and his counsel affirmed that he understood the risks of testifying, and Payne elected to proceed.

¶7 Payne testified regarding his communication with Scheveck leading up to the missed trials on July 19. He testified that he had not received the mailed written notices of his July 2016 trial date, and despite speaking to Scheveck on the phone "several times," was not advised of his trial date by Scheveck until it was "coming up later that week." Payne testified Scheveck had not given enough notice for Payne to make it to the trial, and that he was not provided the specifics of his required appearance, such that, even if he had physically been in Billings, he would not have known "what time to show up and exactly where." He asserted he told Scheveck he was currently in California addressing other legal matters and asked Scheveck to "see if he could get a continuance for the court date." Payne said he asked Scheveck whether Payne could contact the prosecuting attorney, about which Scheveck allegedly "directed [him] to the district attorney's office." Scheveck later denied during his own testimony that he gave Payne information about contacting the prosecution. Prosecutor Bob Spoja testified that Payne contacted him prior to the trials and asked him if there was a way to make his case "go away," and that Spoja had advised him to contact his attorney and made clear it was necessary for him to appear for his trials. Spoja testified

4

that he was sure he had "[told] [Payne] the specific date and time of [his] trials" during their conversation.

¶8    After the defense rested, the State called Scheveck as a rebuttal witness. The State moved the District Court for a *Gillham*[1] order to protect Scheveck from liability for his testimony, and argued:

> Mr. Payne has just [] called into ineffective assistance of counsel to Mr. Schveck [sic] in his representation in failing to notify [] him of this trial. . . . [T]he State's intention is not to talk about the full representation, of course, or any case facts, simply the fact that he had been in contact with his client and the work he did to notify him of it, because Mr. Payne has said he provided insufficient notice of trial.

The District Court asked for Payne's response to the motion. Gallagher replied, "No Objection, Your Honor," and the District Court granted the motion.

¶9    At the beginning of Scheveck's testimony, after he had withdrawn his motion to quash the subpoena but before he answered any questions about his communications with Payne, the District Court stated, "I want to make clear for the record that the Defense is not objecting to Mr. Scheveck's testimony at this time; is that correct?" Gallagher stated, "That's correct, Your Honor."

¶10    Scheveck testified he did not currently have access to his case files or notes he made while working for the Office of the Public Defender, and thus testified from his unassisted

---

[1] *In re Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985); *see also Marble v. State*, 2007 MT 98, ¶ 4, 337 Mont. 99, 169 P.3d 1148 ("An attorney ordered to respond pursuant to a *Gillham* order issued by a district court shall not be subject to disciplinary proceeding before the Commission on Practice nor be subject to charges of malpractice. This immunity extends to all information, testimony or documents necessarily provided in response to the allegations of ineffective assistance of counsel.").

memory of events that occurred approximately two years prior to trial. Perhaps that reason contributed to Scheveck's testimony being at times equivocal, nonresponsive, or contradictory.

¶11 Scheveck testified that most of his communication had been with Payne's mother, speaking to Payne only a "handful of times." Scheveck said he mentioned to Payne his intention to move for a continuance,[2] but at that time he did not know the date of the trials. Under examination by the State, Scheveck testified:

> Q. And so did you tell Mr. Payne's mother that he had the upcoming trial dates of July 19th?
>
> A. I believe so. When I first spoke with Mr. Payne, I informed him that we were going to file a motion to continue, but I did not know the actual date yet, but when I did find out what the date was, I informed his mother of that date.
>
> Q. And so but you did know the date set for DC 15-[]517 as that order was issued May 3rd so you would have known that date.
>
> A. I would have known that date if I was assigned counsel on the 1st of June.
>
> Q. And would your usual practice have been to say we have trial on this date in this case?
>
> A. I don't know with that one.

---

[2] Scheveck initially moved for a continuance in DC 16-170 on June 9, as he was newly appointed and the trial in that case was scheduled to commence only days later. That motion was granted, and Payne's trials in both DC 15-517 and DC 16-170 were then set for July 19. Scheveck testified he also intended to seek a continuance of these trial settings, which is the continuance at issue herein.

6

¶12   Scheveck testified he talked with Payne's mother about the July 19 trial date and asked her to tell Payne to call him, and that Payne needed to sign a speedy trial waiver to support a continuance. After that conversation, Scheveck did not have contact with Payne about the date and never received a signed waiver. Scheveck explained that he did not file the motion for continuance in part because he believed that the district judge assigned to the case would only grant a continuance if accompanied by a signed waiver and, with Payne being in violation of his release conditions and having left the state, it was highly unlikely a continuance would be granted, even with a signed waiver. When questioned by defense counsel, Scheveck admitted he did not send a waiver for Payne to sign, either by obtaining a physical or email address, or through Payne's mother. Payne and Scheveck's testimonies regarding when and how often they were in contact contradicted each other at trial. The District Court asked Scheveck to verify the accuracy of the statement he had made about Payne's absence when he appeared alone for the trials on July 19, including his assertion that "I've had some communication with my client to the extent of trial. He has been informed of this hearing." Scheveck confirmed this earlier statement was correct, even though it partially contradicted his testimony.

¶13   The District Court found Payne guilty on the first count of bail-jumping, but dismissed the second count on double jeopardy grounds. Payne appeals his conviction, challenging the District Court's ruling allowing Scheveck to testify at the bail-jumping trial. He also asserts two ineffective assistance of counsel claims against Scheveck for failing to seek a continuance of the July 19 trial date and for testifying.

7

## STANDARDS OF REVIEW

¶14    We review questions of statutory interpretation *de novo*. *Sartain v. State*, 2017 MT 216, ¶ 9, 388 Mont. 421, 401 P.3d 701. Claims of ineffective assistance of counsel are mixed questions of fact and law that we review *de novo*. *State v. Herman*, 2008 MT 187, ¶ 10, 343 Mont. 494, 188 P.3d 978.

## DISCUSSION

¶15    *1. Did the District Court err by allowing Payne's former attorney to testify as a state witness in his bail-jumping trial, and did the testimony violate Payne's right to effective assistance of counsel?*

¶16    The attorney-client privilege protects communications between attorney and client that occur during their professional relationship. *Am. Zurich Ins. Co. v. Mont. Thirteenth Judicial Dist. Court*, 2012 MT 61, ¶ 9, 364 Mont. 299, 280 P.3d 240.

> The fundamental purpose of the attorney-client privilege is to enable the attorney to provide the best possible legal advice and encourage clients to act within the law. The privilege furthers this purpose by freeing clients from the consequences or the apprehension of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys.

*Am. Zurich Ins. Co.*, ¶ 9.

¶17    Section 26-1-803(1), MCA, provides:

> An attorney cannot, without the consent of the client, be examined as to any communication made by the client to the attorney or the advice given to the client in the course of professional employment.

We applied this provision in *Sweeney v. Mont. Third Judicial Dist. Court*, 2018 MT 95, 391 Mont. 224, 416 P.3d 187. Attorney Sweeney represented defendant McClanahan on a drug charge. *Sweeney*, ¶ 3. After failing to appear with Sweeney at a pre-trial conference,

8

McClanahan was charged with bail-jumping and appointed new counsel, who argued that McClanahan did not receive notice of the pre-trial conference. *Sweeney*, ¶ 4. In response, the State subpoenaed Sweeney to testify about whether she told McClanahan about the pre-trial conference. *Sweeney*, ¶ 5. Despite Sweeney's argument that she could not be compelled to testify against McClanahan under the attorney-client privilege, the district court denied her motion to quash the subpoena. *Sweeney*, ¶¶ 4-5. Sweeney then petitioned for supervisory control, *Sweeney*, ¶ 5, and this Court quashed the subpoena, holding that § 26-1-803(1), MCA, "prohibits the District Court from compelling [the defendant's attorney] to testify about communications made with [the defendant] without his consent when [the attorney's] testimony would prove the elements of a new charge against [defendant]." *Sweeney*, ¶¶ 15, 17. Further, regarding the statute's reference to "advice," we held that, "[i]n the context of representing a client in a criminal case, advising a client of a hearing date, the disregard of which could result in additional criminal liability, is inseparably intertwined with the concept of legal advice." *Sweeney*, ¶ 13.

¶18 Here, the issue is framed in a different context than in *Sweeney*. After the State subpoenaed Scheveck to testify in Payne's bail-jumping trial, and Scheveck moved to quash the subpoena, the District Court postponed a ruling on the issue until the State called Scheveck, a decision that the State said they would only make if Payne decided to testify in his own defense. When Payne elected to do so, and before he testified, the District Court removed the prosecution from the courtroom and advised Payne there was "a distinct possibility that you will waive the attorney-client privilege," and that, "you can't just open

9

the door a little bit; if you open that door a little bit, you open it the whole way as to the topic that the privilege applies [to.]" Payne and Gallagher both expressed their understanding and indicated Payne had been advised concerning the risks of his testimony. Payne then testified that Scheveck had not timely or adequately notified him of the trial date.[3]

¶19 After Payne's testimony, the State moved for a *Gillham* order allowing Scheveck to testify, arguing Payne had "called into [question the] []effective assistance" of Scheveck's representation, specifically, "failing to notify [Payne] of his trial." The District Court asked for the defense's response, to which Gallagher stated, "No objection, Your Honor." The court granted the State's *Gillham* motion, and when Scheveck took the stand, the District Court stated, "I want to make clear for the record that the Defense is not objecting to Mr. Scheveck's testimony at this time; is that correct?," to which Gallagher replied, "That's correct, Your Honor."

¶20 The State argues that a different outcome is merited here than in *Sweeney*, because Payne "impliedly consented to Scheveck being examined" and "waived any attorney-client privilege" by testifying about his communications with Scheveck, calling the effectiveness of Scheveck's assistance into question by his claim that Scheveck had failed to notify him

---

[3] Following the bench trial, the District Court entered a guilty verdict upon findings of fact, including that Payne "knew that his trial date in both DC 15-517 and DC 16-170 was July 19, 2016," that Scheveck "had previously informed Mr. Payne about the July 19, 2016 trial date," and that Payne "purposely decided not to appear at his July 19, 2016 trial in Billings, Yellowstone County, Montana." These findings are not at issue on appeal.

of the trial, and by failing to object to Scheveck's testimony. Payne argues that he "was never asked whether he consented to his attorney testifying," and that, at most, his actions constituted only a limited waiver of the attorney-client privilege, which was exceeded by the scope of Scheveck's testimony, and that the District Court's *Gillham* order violated his right to effective assistance of counsel by allowing Scheveck to violate his duties of confidentiality and loyalty to him as client.

¶21    "[O]nly the client can waive the privilege." *State v. Statczar*, 228 Mont. 446, 452, 743 P.2d 606, 610 (1987); *see also State v. Tadewaldt*, 2010 MT 177, ¶ 17, 357 Mont. 208, 237 P.3d 1273 ("The attorney-client privilege is held by the client and can be waived by the client through voluntary disclosure"). "The burden of establishing waiver of the privilege is on the party seeking to overcome the privilege." *Statczar*, 228 Mont. at 452, 743 P.2d at 610. In *Statczar*, Statczar's attorney called himself to the witness stand during Statczar's competency hearing to testify that Statczar communicated with him about multiple, inconsistent alibis. Statczar did not testify and did not object to his attorney's testimony. *Statczar*, 228 Mont. at 451, 743 P.2d at 609. The attorney withdrew as Statczar's counsel following the competency hearing, but was called by the State as a witness at Statczar's criminal trial, where he testified to the same information. *Statczar*, 228 Mont. at 451, 743 P.2d at 610. The district court allowed the former attorney's testimony over the "strenuous object[ion]" of Statczar's trial attorney. *Statczar*, 228 Mont. at 453, 743 P.2d at 611. We reversed Statczar's conviction, reasoning that there was no

11

evidence, express or implied, that Statczar had intended to waive his attorney-client privilege under § 26-1-803, MCA. *Statczar*, 228 Mont. at 453, 743 P.2d at 610-11.

¶22 We explained that "[w]aiver is defined as the intentional or voluntary relinquishment of a known right or conduct which implies relinquishment of a known right." *Statczar*, 228 Mont. at 452, 743 P.2d at 610. "An implied waiver must be supported by evidence showing that defendant, *by words or by conduct, has impliedly forsaken* his privilege of confidentiality with respect to the communication in question." *Statczar*, 228 Mont. at 453, 743 P.2d at 610 (emphasis added); *see also St. Peter & Warren, P.C. v. Purdom*, 2006 MT 172, ¶ 23, 333 Mont. 9, 140 P.3d 487 (same); *State v. Ahmed*, 278 Mont. 200, 215, 924 P.2d 679, 688 (1996) (defendant's actions "implicitly consented" to his attorney's disclosures); M. R. Evid. 503(a) ("[a] person whom these rules confer a privilege . . . waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter"). "'If the client elicits testimony from the lawyer-witness as to privileged communications this obviously would waive as to all consultations relating to the same subject, *just as the client's own testimony would.*'" *Statczar*, 228 Mont. at 452, 743 P.2d at 610 (quoting McCormick, *Evidence* § 93, 225). (Emphasis added.) We enumerated in *Statczar* the "[t]wo elements [that] must be considered when a court reviews the waiver of attorney-client privilege: (1) the element of a client's implied intention and (2) the element of fairness and consistency." *Statczar*, 228 Mont. at 453, 743 P.2d at 610; *St. Peter & Warren, P.C. v. Purdom*, ¶ 23.

12

¶23 Payne's words and conduct throughout his trial demonstrated an implicit waiver of his attorney-client privilege with Scheveck. He chose to testify regarding his privileged communications with Scheveck after discussing the matter with his current counsel. While Payne was not explicitly asked if he was waiving the privilege, the District Court warned him about the "distinct possibility" he would waive the privilege by testifying, to which Payne responded he had been advised "several times" on the issue and was electing to proceed. While Payne's counsel stated an intention at the beginning of the trial to object to Scheveck's testimony on the grounds of attorney-client privilege, that intention changed after Payne testified, and the defense affirmatively stated it had no objection.[4] Regarding "the element of fairness and consistency," *Statczar*, 228 Mont. at 453, 743 P.2d at 610, we note the Commission Comments to M. R. Evid. 503: "Once conduct reaches a certain point, fairness requires an objective finding of waiver, despite any subjective intentions of the holder; further, once the particular point is reached, consistency requires a finding that such conduct will constitute a waiver, also despite any intention of the [holder]." M. R. Evid. 503, *Commentary*, Comm' Comments (1990). Here, Payne's actions clearly reached the point of waiving the privilege.

---

[4] The State argues that Payne's lack of objection waives appellate review of the issue altogether, but Payne's affirmative actions in declining to object to Scheveck's testimony are inextricably intertwined with the issue of his asserted implied waiver of the attorney-client privilege, an issue of constitutional dimension that we conclude must be reached to ensure the fundamental fairness of the proceeding, and which we addressed by way of supervisory control in *Sweeney*.

13

¶24     Payne argues that, even if he waived the privilege, the District Court permitted the scope of Scheveck's testimony to exceed the scope of his waiver. However, we disagree. The State outlined the scope of its proposed examination of Scheveck before calling him, and Payne offered no objection or concerns regarding the State's intentions. Nor, during Scheveck's testimony, did Payne object to the State's questioning as beyond the scope of Payne's understanding of his consent to Scheveck's testimony or beyond the scope of his own testimony. As we held in *Statczar*, a waiver extends "to all consultations relating to the same subject." *Statczar*, 228 Mont. at 452, 743 P.2d at 610 (quoting McCormick, *Evidence* § 93, 225); *see also* M. R. Evid. 503(a) (a person waives a privilege if the person "voluntarily discloses or consents to disclosure of *any significant part of the privileged matter*") (emphasis added). Consistent therewith, the District Court cautioned Payne that "you can't just open that door a little bit . . . you open it the whole way as to the topic that the privilege applies [to]." Payne's testimony included assertions of flagrant ineffectiveness by Scheveck, including that Scheveck failed to notify him about the date of the trials until the week of the trials, failed to advise him of where and when the trials would be held, and directed Payne how to personally contact the prosecuting attorney. The State's examination necessarily sought to address these issues.

¶25     Lastly, Payne argues that allowing Scheveck to testify violated his right to effective counsel under the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution, which guarantee a defendant the right to effective assistance of counsel. *State v. Main*, 2011 MT 123, ¶ 47, 360 Mont. 470, 255 P.3d 1240.

14

Payne contends that the District Court allowed Scheveck to violate his duties of confidentiality and loyalty to him, and that Scheveck "actively advocated for and testified on behalf of the other side."

¶26 We generally review claims of ineffective assistance of counsel (IAC) by applying the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2064 (1984). A defendant alleging ineffective assistance of counsel must prove both that "(1) counsel's performance was deficient . . . and (2) counsel's performance prejudiced the defense by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Main*, ¶ 47. As Payne notes, we discussed in *State v. Wereman* the implication for a defendant's constitutional right to effective counsel when counsel makes statements on the record about his inability to contact the defendant, and we concluded there that counsel's actions did not constitute ineffectiveness. *State v. Wereman*, 273 Mont. 245, 252, 902 P.2d 1009, 1013 (1995).

¶27 We first determine if the merits of an IAC issue can be reached on direct appeal or must be reserved for postconviction relief. *State v. Aker*, 2013 MT 253, ¶ 34, 371 Mont. 491, 310 P.3d 506. The record must answer "why" counsel performed in the way the client alleges is deficient in order to reach the issue on direct appeal. *Aker*, ¶ 34. Here, the record fully captures the issue because we know "why" Scheveck testified—he testified in response to the *Gillham* order after Payne testified that Scheveck's communications with him about the trial date were inadequate.

15

¶28    However, as explained above, Payne waived his attorney-client privilege and, in light of that waiver, we cannot conclude Scheveck's performance was deficient under the first prong of the *Strickland* test.  Before Payne waived the privilege, Scheveck filed a motion to quash the subpoena compelling him to testify. Only after Payne waived the privilege and the court issued the *Gilham* order did Scheveck testify.  Further, Scheveck did not "actively advocate" for the State, as Payne argues; if anything, Scheveck appeared to shield Payne in his testimony, commonly offering equivocal or unhelpful answers (Prosecutor: "And would your usual practice have been to say [to your client] we have trial on this date in this case?"  Scheveck: "I don't know. . .").

¶29    Similar to our determination in *Wereman*, we conclude the District Court did not err by allowing Scheveck to testify after Payne had waived attorney-client privilege, and that Payne's constitutional rights were not violated thereby.

¶30    *2. Alternatively, did Payne receive ineffective assistance of counsel when his former attorney failed to file a motion to continue the date of his trials in the underlying criminal cases?*

¶31    Payne offers the alternative claim that Scheveck also rendered ineffective assistance of counsel by failing to file a motion to continue his July 19, 2016 trials after Payne had requested he do so.  However, by this claim Payne is challenging Scheveck's assistance, not in the bail-jumping case on appeal, but in the underlying PFMA and criminal mischief cases.  Before the Court in this appeal is Payne's bail-jumping conviction, which, as the State notes, is "a proceeding where Scheveck never represented Payne or served as defense counsel."  To the extent Scheveck rendered assistance in the bail-jumping proceeding by

16

his testimony, we have resolved above Payne's IAC claim based upon that testimony. Payne's remedy for any alleged errors in Scheveck's representation in the underlying proceedings would have been either on direct appeal from those proceedings or by a postconviction proceeding challenging any of those convictions.

¶32 Even assuming an IAC claim regarding Scheveck's representation in the underlying proceedings could be raised in this appeal as tangentially related, we conclude the record demonstrates that Scheveck did not render ineffective assistance. Counsel's conduct is not deficient under the first *Strickland* prong if it is objectively reasonable under "prevailing professional norms." *Whitlow v. State*, 2008 MT 140, ¶ 20, 343 Mont. 90, 183 P.3d 861. This Court indulges in a "strong presumption" that counsel's assistance is reasonable; and we make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Whitlow*, ¶ 15 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Scheveck testified that moving for a continuance was probably futile because, with Payne being in violation of his release conditions and having left the state, it was highly unlikely a continuance would have been granted, even with a signed speedy trial waiver from Payne. Counsel is not ineffective for failing to pursue a meritless strategy or one with an unlikely chance of success based upon the exercise of reasonable judgment. *State v. Hauer*, 2012 MT 120, ¶ 47, 365 Mont. 184, 279 P.3d 149; *Rose v. State*, 2013 MT 161, ¶ 27, 370 Mont. 398, 304 P.3d 387. As the District Court's findings made clear, Payne's difficulty was of his own making, as he "never should have gone to California in

17

the first place. By violating the conditions of his release, Mr. Payne created" the difficulties that led him to miss the scheduled trials, at which he "purposely decided not to appear."

¶33    Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR