FILED

09/20/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0509

DA 21-0509

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 178N

CITY OF KALISPELL,

      Plaintiff and Appellee,

    v.

MICHELLE SQUIER RAVE,

      Defendant and Appellant.

---

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-20-457(C)
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Michael Marchesini, Assistant Attorney
General, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

        Johnna Preble, Kalispell City Attorney, Larissa Anderson, Assistant City
Attorney, Whitefish, Montana

---

           Submitted on Briefs:  July 19, 2023

               Decided:  September 20, 2023

Filed:

_____
           Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Michelle Squier Rave (Rave) appeals from the Kalispell Municipal Court jury verdict finding her guilty of partner or family member assault (PFMA) and from the court's denial of her motion for mistrial. We affirm.

¶3 On October 10, 2019, law enforcement responded to the residence where Rave and her boyfriend, Landon Wilson (Wilson), were staying. They encountered Wilson outside the residence upset and crying. He told Sergeant Fetveit he and Rave had been arguing and she grabbed him, ripped his shirt, and slapped him when he tried to leave. Fetveit then attempted to talk with Rave. When Rave answered Fetveit's knock at the door, she was on the phone. Fetveit indicated he desired to talk with her about the alleged assault.[1] Ultimately, Rave was arrested and charged with PFMA and convicted. On appeal, Rave asserts that during trial the prosecutor repeatedly and intentionally questioned Rave's

---

[1] She responded by asking if he was talking about Wilson breaking into her home. When asked why Wilson's shirt was ripped, she responded she ripped it when Wilson was trying to choke her. Fetveit continued to attempt to talk with Rave but she persisted in her telephone call.

post-*Miranda*[2] silence improperly using her silence against her and violating her constitutional right to due process. In response, she brought a motion for a mistrial which she asserts the municipal court improperly denied. Further facts will be discussed as necessary below.

¶4   Rave appealed the denial of her motion for a mistrial to the District Court which affirmed the municipal court's denial of that motion. In situations such as this, we review the case as if the appeal had been originally filed in this Court, applying the appropriate standard of review. *City of Helena v. Broadwater*, 2014 MT 185, ¶ 8, 375 Mont. 450, 329 P.3d 589; *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. Whether a defendant's right to due process has been violated is a question of constitutional law over which we exercise plenary review. *State v. Schaff*, 2011 MT 19, ¶ 7, 359 Mont. 185, 247 P.3d 727 (citation omitted). We review the denial of a motion for a mistrial for abuse of discretion. *State v. Krause*, 2021 MT 24, ¶ 11, 403 Mont. 105, 480 P.3d 222. We apply a deferential standard to the trial court because it is in the best position to decide the motion. *Krause*, ¶ 11. We will affirm the trial court's denial of a motion for mistrial if the court acted rationally and responsibly. *State v. Novak*, 2005 MT 294, ¶ 25, 329 Mont. 309, 124 P.3d 182. A mistrial is an extreme remedy which we will only grant upon manifest

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966) ("In sum, the privilege [against self-incrimination] is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" *Miranda*, 384 U.S. at 460, 86 S. Ct. at 1620 (quoting *Mallory v. Hogan*, 378 U.S. 1, 8, 84 S. Ct. 1489, 1493 (1964)).

necessity, *State v. Denny*, 2021 MT 104, ¶ 13, 404 Mont. 116, 485 P.3d 1227, as we prefer remedial action short of a mistrial. *Novak*, ¶ 26.

¶5 "When determining whether to grant or deny a motion for mistrial the trial court will look to whether a defendant has been denied a fair and impartial trial." *State v. Pierce*, 2016 MT 308, ¶ 24, 385 Mont. 439, 384 P.3d 1042. We apply a two-step process when determining if the defendant has been denied a fair and impartial trial where we first consider whether the prosecutor's comments were improper and, if so, we then look to whether the improper comments prejudiced the defendant's right to a fair trial. *Pierce*, ¶ 24 (citations omitted).

¶6 **Prosecutor's Comments.** During the prosecutor's direct examination of Sergeant Fetveit, the following exchange occurred:

> Q. In the booking process, did you read [Rave] her *Miranda* warning when she arrived?
>
> A. I did.
>
> Q. Did you ask her if she understood her rights?
>
> A. I did.
>
> Q. What was her response?
>
> A. That she didn't want to speak to me.
>
> Q. Okay. But you gave her the opportunity to tell her side of the story again?
>
> A. I did.

Rave's counsel objected based on burden shifting and the court sustained the objection and directed the prosecutor to "move on." Shortly thereafter, the prosecutor again brought up *Miranda* while questioning Sergeant Fetveit:

> Q. We talked about the *Miranda* warning. Did she actually end up making statements to you?
>
> A. No.
>
> Q. Did she end up telling you anything about what happened in an excited manner while all this was going on?
>
> A. I don't recall.
>
> Q. Did she say anything to you while in the booking room?
>
> A. Yes.
>
> Q. Can you just tell us what the *Miranda* warning is really quickly?
>
> A. Say that again?
>
> Q. Can you tell us what the *Miranda* warning is?
>
> A. Yes, uh, *Miranda* warning, it's, uh, "you have the right to remain silent, anything you say can and will be used against you in a court of law . . ."

Rave's counsel then asked to be heard outside the presence of the jury. Upon such, Rave's counsel renewed his objection and made a motion for mistrial. Rave's counsel argued the City was improperly attempting to show that by Rave invoking her *Miranda* rights, she had something to hide and faulted her for "lawyer[ing] up" rather than talking to law

enforcement.[3]  The City responded that it was not trying to use Rave's silence against her, but contrarily was attempting to show that although she was given the opportunity to remain silent, she waived that right by volunteering statements after receiving the *Miranda* warning.  The court noted the City's line of questioning to be inappropriate but did not believe it rose to the level of a mistrial and declined to grant the mistrial.  The court then offered to give a cautionary instruction and Rave accepted the offer.  Upon resuming trial before the jury, the municipal court stated,

> I'm going to sustain the objection. [Prosecutor], you are warned that the burden is solely on the City to prove this case beyond a reasonable doubt. The defendant has no burden whatsoever in this matter. Please proceed.

Rave did not at that time or thereafter during trial object to the cautionary instruction's content or indicate it should have been given to the jury, rather than to the prosecutor.

¶7     The City does not dispute the Prosecutor's questioning in the exchanges set forth above was improper, thus the first step in the process of determining if the defendant has been denied a fair and impartial trial is met.

¶8     **Prejudice.** Rave contends the prosecutor asked Fetveit "a series of premeditated questions" about her *Miranda* invocation and her refusal to tell her side.  She asserts law enforcement induced her silence by assuring it would not be used against her and then used her silence to undercut her self-defense testimony in violation of her right to due process.

---

[3] The prosecution did not use the terminology "lawyering up," but rather this was the characterization used by Rave's counsel during the conference outside the presence of the jury.

Rave asserts the prosecutor's questioning cast doubt on and impeached her claim of self-defense by forcing jurors to ask themselves why wouldn't Rave have spoken up if she was truly acting in self-defense. In sum, Rave asserts the "prosecutor's improper questioning, combined with the conflicting evidence of who was the true aggressor and the court's anemic cautionary instruction" deprived her of a fair trial.

¶9 Although the City does not contest the prosecutor's comments in the brief exchanges set forth above were improper, the City asserts the error to be harmless and not prejudicial. The City asserts the prohibition against commenting on post-*Miranda* silence is to protect against the defendant's silence being used to impeach an explanation offered for the first time at trial—which, the City asserts, is not what happened. Rather than intending to use Rave's silence against her, the City sought to show that, after being Mirandized, Rave was not silent and continued to make statements to law enforcement. At the scene, she told both Fetveit and Officer Brinton she had acted in self-defense. The City was attempting to establish Rave's statements—not her silence—contradicted evidence at the scene and also contradicted her trial testimony. The City further asserts the brief reference to *Miranda* warnings and Rave's temporary silence was harmless as it: "comprised roughly three minutes of a five-hour trial"; was "isolated to a single witness"; the City did not mention such in opening, cross-examination of Rave, or in closing; the City did not mention such in the context of her claim of self-defense; the court sustained Rave's objections and "sternly admonished" the City in the presence of the jury; and there was ample evidence supporting Rave's conviction.

7

¶10 Rave claims her federal constitutional privilege against self-incrimination and her right to due process were violated by the prosecutor eliciting testimony which commented on her exercising her right to remain silent post-*Miranda* warning. The use of a defendant's silence for impeachment after receiving *Miranda* warnings violates the Fourteenth Amendment's due process clause. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976). While a prosecutor may challenge the truthfulness of a defendant's defense at trial, a prosecutor may not comment on or infringe upon the defendant's right to remain silent. *State v. Godfrey*, 2004 MT 197, ¶¶ 37, 40, 322 Mont. 254, 95 P.3d 166. However, if a prosecutor does so, the error is harmless if the prosecution proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967); *see also United States v. Hernandez*, 476 F.3d 791, 797 (9th Cir. 2007).[4] In determining whether improper comments on silence contributed to the verdict, we consider three factors: (1) the extent of the comments, (2) whether an inference of guilt from silence was stressed to the jury, and (3) the extent of other evidence of defendant's guilt. *Hernandez*, 476 F.3d at 797 (citations omitted).

¶11 From our review of the record, the extent of the improper comments was very brief and isolated in the context of the entire trial. Additionally, an inference of guilt from silence was not stressed to the jury. The City did not imply or allude to Rave raising her

---

[4] As Rave asserts violations of her federal constitutional privilege against self-incrimination and her right to due process, we apply federal harmless-error law. Rave does not assert or cite the Montana Constitution in support of her claim.

8

self-defense claim for the first time at trial and, in fact, presented evidence that Rave had raised self-defense when law enforcement responded to the scene. The prosecution's opening, cross-examination of Rave, and closing focused on the statements Rave made which were inconsistent with other evidence, not on her silence. The prosecution was not attempting to use Rave's post-*Miranda* silence to undercut her claim of self-defense, but rather in an attempt to admit the statements she did make after being Mirandized. The focus of the prosecution was to point out inconsistencies in Rave's prior statements and her trial testimony—not to use her silence against her. As such, we turn to consideration of the extent of other evidence of Rave's guilt.

¶12 From our review of the record, we determine there was substantial evidence supporting Rave's conviction. Wilson's father and Wilson contradicted Rave's assertion that Wilson initiated the altercation. Neighbors Gendreau and Watkins' testimony refuted Rave's claim of acting in self-defense—hearing a male voice yelling, "stop, get off me, I'm not doing this" and hearing loud screaming and yelling mostly from Rave all day long. Officer Brinton's testimony contradicted Rave's assertion that Wilson came through the window. Rave's testimony provided conflicting stories about whether she called 911. Rave's demeanor and appearance contradicted her rendition, as did Wilson's ripped shirt and chest scratch. Rave's statements contradicted testimony from five other witnesses and her own testimony. Contrary to Rave's version, Wilson testified Rave attacked him while on the phone with his father. Wilson's father testified to hearing this in real time. Wilson had a torn shirt, a scratch on his chest, and was upset and crying when officers arrived.

9

Rave's rendition of Wilson flying through the window was substantially inconsistent and implausible if testimony of the other witnesses was believed by the jury. On this record, we cannot find that the extent of other evidence supporting guilt was insufficient.

¶13    In determining whether Rave was prejudiced by the prosecutor's brief improper exchanges with Fetveit, we consider the *Hernandez* factors in conjunction with the court's admonishment to determine its sufficiency in addressing potential prejudice. Rave takes issue with the municipal court directing its admonishment at the prosecutor rather than the jury and further asserts the admonishment was insufficient to address the error. The City counters that Rave conceded to the contents of the District Court's admonishment. Further, although the admonishment was directed at the prosecutor, the court instructed the jury twice on the City's burden and Rave's absence of burden.

¶14    At the outset, the District Court instructed the jury the City had the burden to prove Rave's guilt beyond a reasonable doubt and again instructed the jury in this regard prior to closing arguments. Upon denying Rave's motion for a mistrial, the District Court, in the presence of the jury, sustained Rave's objection and then forcefully admonished the prosecutor—"you are warned that the burden is solely on the City . . . [Rave] has no burden whatsoever." While this admonishment was not directed as an instruction to the jury as had been discussed during the conference outside the presence of the jury, the jury was present and, from the admonishment, it was clear the court was sanctioning the prosecutor for inappropriate inquiry. Under the circumstances, it is likely the admonishment was more impactful than merely again reciting an instruction to the jury that the City had the burden

10

of proof. Regardless, Rave's counsel made no contemporaneous objection to the admonishment nor did counsel later indicate the admonishment to be insufficient or request additional instruction be made to the jury. A party waives the right to appeal an alleged error when the appealing party acquiesced in, actively participated in, or did not object to the asserted error. *State v. Winter*, 2014 MT 235, ¶ 17, 376 Mont. 284, 333 P.3d 222; *State v. Bomar*, 2008 MT 91, ¶ 33, 342 Mont. 281, 182 P.3d 47; *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, 983 P.2d 881. To the extent Rave asserts error, she acquiesced in it and has waived appeal thereof.

¶15 The District Court did not abuse its discretion in denying Rave's motion for a mistrial. The Municipal Court's admonishment of the prosecutor together with the minimal extent of the improper inquiry, the lack of inference of guilt from silence being stressed to the jury, and the extent of the other evidence of Rave's guilt sufficiently remediated the potential prejudice of the prosecutor's minimal inappropriate *Miranda* inquiry. As such, Rave was not denied her constitutional right to a fair trial.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ INGRID GUSTAFSON

11

We concur:


/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER